1  Bruce H. Jackson, State Bar No. 98118
    bruce.h.jackson@bakernet.com

2  **BAKER & McKENZIE LLP**
  Two Embarcadero Center, 11th Floor

3  San Francisco, CA  94111-3802
  Telephone:  +1 415 576 3000

4  Facsimile:   +1 415 576 3099

5  Attorneys for Defendant
  NATIONAL TOBACCO COMPANY, LP

6

7

8               UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12  RAYMOND RILEY p.k.a. Boots Riley,
   SOLOMON DAVID and MARLON IRVING

13  p.k.a. Lifesavas,

14         Plaintiffs,

15     v.

16  NATIONAL TOBACCO COMPANY LP,

17         Defendant.

| Case No.  C-08-01931 JSW |
| --- |
| **NOTICE OF MOTION AND MOTION BY DEFENDANT NATIONAL TOBACCO COMPANY TO DISMISS, STAY OR TRANSFER IN FAVOR OF FIRST-FILED ACTION IN NEW YORK; OR IN THE ALTERNATIVE, TO DISMISS OR TRANSFER FOR IMPROPER VENUE UNDER 12(B)(3) AND 28 U.S.C. § 1406(a); OR IN THE ALTERNATIVE, TO TRANSFER FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES UNDER 28 U.S.C. § 1404(a)** |
| **Date:**    **June 13, 2008**<br>**Time:**    **9:00 a.m.**<br>**Crtrm: 2, 17th Floor**<br>**Before: The Honorable Jeffrey S. White** |
| **[FILED VIA E-FILING]** |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

# TABLE OF CONTENTS

**Page No.**

NOTICE OF MOTION................................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.      SUMMARY OF ARGUMENT ....................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ...........................................2

III.    STATEMENT OF FACTS............................................................................2

       A.    ZigZagLive Tour ..............................................................................2

       B.    Galactic Funk Touring Agreement....................................................2

       C.    NTC's Complaint for a Declaratory Judgment .................................4

       D.    Plaintiffs' California Actions ............................................................5

IV.    ARGUMENT ...............................................................................................6

       A.    NTC's Suit was the "First-Filed" Action, and Involves Identical Parties and Issues. 6

              1.    A Dismissal or Stay in California is Appropriate Under the First to File Rule. ...6

              2.    No Exception to the First to File Rule Applies to Prevent Dismissal  of this Action............................................................................8

       B.    The Sponsorship Agreement Contains a Valid Forum Selection Clause that Mandates a New York Forum for All Disputes. .....................................................10

              1.    The Agreement Between the Parties Provides that the Proper Venue for Adjudication of All Disputes is in the Courts of New York. .............................10

              2.    Alternatively, Transfer of the Action to New York is Warranted under 28 U.S.C. §1406(a), as the Action Could be Brought in New York and such a Transfer Would Promote Judicial Economy and the Interests of Justice. .......................13

       C.    Transfer is Warranted Under 28 U.S.C. §1404(a)................................................14

              1.    The Southern District of New York Is A Proper Court ....................................14

               2.    New York is the More Convenient Forum.......................................................14

               3.    The Interests of Justice Favor Transferring an Action to the Forum Designated by a Valid Forum Selection Clause. .................................................15

V.     CONCLUSION...........................................................................................16

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1

## TABLE OF AUTHORITIES

2

**Page No(s).**

3

## CASES

4

5
A.J. Industries, Inc. v. United States District Ct.,
503 F.2d 384 (9th Cir. 1974) ......................................................................................... 14

6

7
Alltrade, Inc. v. Uniweld Products, Inc.,
946 F.2d 622 (9th Cir. 1991) ........................................................................................ 6, 8

8
Argueta v. Banco Mexicano, S.A.,
87 F.3d 320 (9th Cir. 1996) ......................................................................................... 1, 10

9

10
Bookout v. Beck,
354 F.2d 823 (9th Cir. 1965) ........................................................................................... 13

11
C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,
213 F.3d 474 (9th Cir. 2000) ........................................................................................... 11

12

13
District No. 1, Pacific Coast District v. Alaska,
682 F.2d 797 (9th Cir. 1982) ....................................................................................... 1, 10

14
First Specialty Insurance Corp. v. Admiral Insurance Co.,
No. 07 Civ. 408, 2007 U.S. Dist. LEXIS 50714 (D. Or. June 22, 2007) ........................... 12

15

16
Goldlawr v. Heiman,
369 U.S. 463 (1962) ......................................................................................................... 13

17
Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.,
949 F. Supp. 1427 (N.D. Cal. 1997) ................................................................................. 12

18

19
Hoffman v. Blaski,
363 U.S. 335 (1960) ......................................................................................................... 14

20
King v. Russell,
963 F.2d 1301 (9th Cir. 1992) .......................................................................................... 13

21

22
Koresko v. Realnetworks, Inc.,
291 F. Supp. 2d 1157 (E.D. Cal. 2003) ............................................................................ 10

23
Manetti-Farrow, Inc. v. Gucci America, Inc.,
858 F.2d 509 (9th Cir. 1988) ............................................................................... 10, 11, 12

24

25
Minskoff v. American Express Travel Related Services Co.,
No. 94 Civ. 967, 1995 U.S. Dist. LEXIS 12930 (S.D.N.Y. Sept. 6, 1995) ........................ 11

26
Nautilus, Inc. v. Gately's LLC,
2006 U.S. Dist. LEXIS 91916 (W.D. Wa. 2006) ............................................................... 10

27

28
North American Cas. Ins. Co. v. Encompass Power Serv., Inc.,
2005 U.S. Dist. LEXIS 33314 (E.D. Cal. 2005) .................................................................. 8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ii

P&S Business Machines, Inc. v. Canon USA, Inc.,
    331 F.3d 804 (11th Cir. 2003) ........................................................................ 15

Pacesetter Systems, Inc. v. Medtronic, Inc.,
    678 F.2d 93 (9th Cir. 1982) ......................................................................... 1, 6

Palantir Technologies,
    2007 U.S. Dist. LEXIS 76830 ................................................................ 6, 8, 9

Shapiro v. Bonanza Hotel Co.,
    185 F.2d 777 (9th Cir. 1950) ........................................................................ 13

Sony Computer Entertainment America, Inc. v. America Medical Reponse, Inc.,
    2007 U.S. Dist. LEXIS 24294, 2007 WL. 781969 (N.D. Cal. March 13, 2007)................... 9

Stewart Organization, Inc. v. Ricoh Corp.,
    487 U.S. 22 (1988) ....................................................................................... 15

Stonehenge, Ltd. v. Garcia,
    989 F. Supp. 539 (S.D.N.Y. 1998) ................................................................. 15

Tolentino v. Mossman,
    No. 07 Civ. 1243, 2007 U.S. Dist. LEXIS 95717 (E.D. Cal. Dec. 13, 2007) ..................... 12

Toy Biz v. Centuri Corp,
    990 F. Supp. 328 (S.D.N.Y. 1998) ................................................................... 8

Van Dusen v. Barrack,
    376 U.S. 612 (1964) ..................................................................................... 15

## STATUTES

Page No(s).

15 U.S.C. § 1125 ................................................................................. 7, 13, 14

28 U.S.C. § 1332 ..................................................................................... 13, 14

28 U.S.C. §§ 1391(b) and (c) ............................................................................ 14

28 U.S.C. § 1404 ......................................................................................... 2

28 U.S.C. § 1404(a) .......................................................................... 1, 13, 14, 15

28 U.S.C. § 1406(a) ................................................................................... 2, 13

Fed. R. Civ. P. 12(b)(3) .................................................................................. 2, 10

Cal. Bus. & Prof. Code § 17200 .......................................................................... 7

Cal. Civ. Code § 3344 ..................................................................................... 7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

iii

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on June 13, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard, before The Honorable Jeffrey S. White, in Courtroom 2, 17th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant National Tobacco Company LP ("National Tobacco") will and hereby does move this Court for an order dismissing, staying or transferring the action in favor of the first-filed action in the United States District Court for the Southern District of New York; or in the alternative, dismissing or transferring this action for improper venue under F.R.C.P. 12(b)(3) and 28 U.S.C. § 1406(a); or in the alternative, transferring this action for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a).

This motion is based on the following grounds: that the principles of comity and the preservation of judicial resources favor dismissing or staying an action where a substantially similar action was first-filed in another district court; and that venue is improper because of a forum selection clause binding the parties and mandating adjudication of all disputes in New York; and that the convenience of the parties and witnesses favors transferring the action to New York. This motion is based upon this notice of motion and motion, the following memorandum of points and authorities, the declarations of Marcella Ballard, Winifred Chane and Matt McDonald, and the proposed order submitted herewith, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: May 5, 2008

Respectfully submitted,

BAKER & McKENZIE LLP
BRUCE H. JACKSON

By: _____/s/_____
        Bruce H. Jackson
Attorneys for Defendant
NATIONAL TOBACCO COMPANY, LP

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

Plaintiffs, who are musical artists, performed at four East Coast concerts in November 2007 sponsored by Defendant National Tobacco Company, LP ("NTC") pursuant to an agreement containing a New York forum selection and choice of law clause.  Months later, Plaintiffs claimed that NTC had used their likenesses without permission and demanded payment in addition to the sponsorship payments that NTC had already made.  NTC sued the Plaintiffs in this action in federal court in New York on April 4.  A week later, notwithstanding that all issues raised in this action were already raised in the first-filed New York Action and that the forum selection provision mandates venue in New York, Plaintiffs filed this action concerning identical issues as the New York Action.

NTC respectfully requests that this Court dismiss, stay, or transfer this case under the well established "first to file" rule.  Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982).  NTC's New York action was filed before the present action, the New York action encompasses all parties to this action and substantially all issues, and arises out of the same set of transactions and occurrences.  Dismissing, staying, or transferring the present action to New York would further judicial efficiency and the conservation of judicial resources by preventing duplicative discovery, pre-trial and trial proceedings.

Dismissal or transfer of this action is independently warranted under Fed. R. Civ. Proc. 12(b)(3) and 28 U.S.C. § 1406(a).  See, Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996); District No. 1, Pacific Coast District v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982).  The Northern District of California is an improper venue for this action, as the parties are bound by a forum selection clause that mandates the adjudication of all disputes in New York; accordingly, it would be proper to dismiss or transfer the present action to New York.

In the alternative, NTC respectfully requests that this Court transfer this case to New York under 28 U.S.C. §1404(a) for the convenience of the parties and witnesses.  The operations of the ZigZagLive tour are based in New York, as are the offices of CMJ and Galactic Funk Touring's agent who signed the agreement; consequently, New York is a more convenient forum for all parties.

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether a dismissal, stay or transfer of this action is warranted, in light of a first-filed action in New York, concerning identical parties and substantially identical issues.

2.    Whether the Northern District of California is an improper venue, in light of a forum selection clause binding the parties to this action to adjudicate their disputes in New York.

3.    If the proper venue is in New York, whether this action should be dismissed under Fed. R. Civ. P. 12(b)(3), or dismissed or transferred under 28 U.S.C. §1406(a).

4.    Whether the convenience of the parties and witnesses to this action favors transferring the action to New York, under 28 U.S.C. §1404.

## III.    STATEMENT OF FACTS

### A.    ZigZagLive Tour

NTC, through the license of its indirect parent company, is the exclusive distributor of Zig-Zag® brand cigarette paper products.  Declaration of Marcella Ballard ("Ballard Dec.") Ex. 2, Am. Compl. ¶ 14. As part of its marketing campaign, NTC sponsors and promotes concerts under its Zig-Zag® Live Club Tour series ("ZigZagLive") as well as music events organized by other parties, such as radio stations or local press.  Id. ¶ 17.  NTC engaged CMJ, a music promotion and marketing agency based in New York City, New York, to undertake the ZigZagLive marketing and operations related to the concert series.  NTC, through CMJ, operates a website at the URL www.zigzaglive.com on which viewers may learn about various musical guests in the ZigZagLive tour and concert schedule, as well as musical guests performing at other NTC sponsored events.  Id. ¶ 18.  NTC's ZigZagLive operations are run from CMJ's offices in New York City, New York. Chane Dec. ¶ 1.

### B.    Galactic Funk Touring Agreement

In October 2007, as part of the ZigZagLive tour and through its agent CMJ, NTC entered into a Sponsorship Agreement (the "Agreement") with an entity called Galactic Funk Touring, Inc. ("Galactic Funk"). The Agreement granted NTC the right to sponsor, promote, and advertise

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

2

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

concerts in November 2007 in New York City, Boston, Raleigh, North Carolina and Athens, Georgia featuring Galactic Funk.  McDonald Dec. Ex. A.  Under the Agreement, NTC also gained rights to market and advertise the ZigZagLive concerts and to publish biographies and photographs of the performing artists.  Id.  Paul Peck, Galactic Funk's agent, signed the Agreement on behalf of Galactic Funk from his New York, NY offices.  McDonald Dec. Ex. A.

Galactic Funk included the "regular" members of the band Galactic along with Plaintiff Boots Riley and Plaintiffs Solomon David and Marlon Irving p.k.a. "Lifesavas."  See Ballard Dec. Ex. 2, Am. Compl. Ex. 1; Chane Dec. ¶ 2; McDonald Dec. ¶¶ 3-8.  Boots Riley performed as the vocalist for the band Galactic – not solo – at the sponsored shows.  Lifesavas also performed onstage together with Galactic and also as an opening act at the sponsored shows, which were specifically delineated in the Agreement.  See Ballard Dec. Ex. 2, Am. Compl. Ex. 1: NYC Showbill; and Ex. 2.  Indeed, Boots Riley today is still performing with, and touring as, a part of the band Galactic.  See Ballard Dec. Ex. 2, Am. Compl. Ex. 3—a webpage from http://www.galacticfunk.com.  Galactic Funk's approved artwork still refers to Boots Riley as a participating member of the group on its webpage at http://www.galacticfunk.com/presskit.

Mr. Peck, Galactic Funk's manager, directed modifications to, then approved artwork, text, and showbills for the 2007 ZigZagLive tour both orally and in writing to NTC's agent.  McDonald Dec. ¶¶ 2-4, Ex. B, C; Ballard Dec. Ex. 2, Am. Compl. ¶¶ 26-28.  The artwork and showbills referred to Boots Riley and Lifesavas along with the band Galactic.  McDonald Dec. ¶ 3.  Mr. Peck specifically directed NTC's agent to adjust the font size for references to Boots Riley and Lifesavas on showbills.  McDonald Dec. ¶ 4, Ex. C.  Mr. Peck in his capacity as agent for Galactic Funk had actual and apparent authority to act on behalf of Galactic, Boots Riley and Lifesavas.  See McDonald Dec. ¶ 8; Ballard Dec. Ex. 2 Am. Compl. Exs. 1 and 2.  NTC reasonably understood that Galactic Funk included all performers who were participating in the ZigZagLive sponsored events.  Id.

CMJ employees attended several of the sponsored events, including the event in New York City.  Chane Dec. ¶ 2.  Plaintiffs Boots Riley and Lifesavas never at any time stated to NTC that their appearances were separate from that of Galactic Funk Touring group.  Ballard Dec. Ex. 2 Am. Compl. ¶ 39.  Plaintiffs never complained about NTC's sponsorship of the tour, nor of the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

3

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

1   appearance of their names on showbills and promotional materials that also carried the ZigZag logo.

2   McDonald Dec. ¶ 7, Chane Dec. ¶ 6, Ballard Dec. Ex. 2 Am. Compl. ¶ 38.  NTC "ZigZag" banners

3   and promotional materials were prominently visible on the showbills, at the stages, and in the foyer

4   of the concert venues.  McDonald Dec. ¶ 6, Chane Dec. ¶ 3.  Plaintiff Boots Riley socialized at the

5   ZigZagLive promotional booth at the various concerts, and repeatedly asked CMJ representatives for

6   a ZigZagLive promotional guitar.  Chane Dec. ¶ 5, Ballard Dec. Ex. 2 Am. Compl.  ¶ 37.  In fact,

7   Plaintiff Boots Riley autographed many showbills containing the ZigZagLive logo, so that they

8   could later be distributed to fans. Chane Dec. ¶ 4, Ex. A.  Likewise, Lifesavas socialized with

9   ZigZagLive representatives at the Raleigh, North Carolina show.  McDonald Declaration ¶¶ 5-6.  At

10  no time before, during or immediately after the ZigZagLive tour did Plaintiffs protest affiliation with

11  NTC.  McDonald Dec. ¶ 7, Chane Dec. ¶ 6, Ballard Dec. Ex. 2 Am. Compl. ¶ 38.

12          Based on the Agreement, the actual and apparent authority of Mr. Peck and Plaintiffs' willing

13  and voluntary appearances on the ZigZagLive tour, NTC truthfully posted information on its

14  website, including show review blogs and links to the performers' own websites, along with

15  information about Galactic and various other performers appearing on the ZigZagLive tour.

16  McDonald Dec. ¶ 8.  The agreement between NTC and Galactic Funk expressly specified that the

17  courts located in New York City, New York were the only appropriate venue for any disputes and

18  New York substantive law as the law governing disputes.  See McDonald Dec. Ex. A at ¶ 9,

19  "Governing Law and Choice of Forum."

20  **C.    NTC's Complaint for a Declaratory Judgment**

21          NTC was not aware that the Plaintiffs in these related actions objected to having information

22  about them on the ZigZagLive website until March 28, 2008.  Ballard Dec. ¶ 4, Ex. 2 Am. Compl. ¶¶

23  38, 39.  On that date, Plaintiffs' counsel wrote a letter to NTC on behalf of Plaintiffs as well as

24  Timothy Parker and Xavier Mosley, who perform as "Blackalicious," protesting for the first time

25  NTC's use of the Plaintiffs' names, likenesses and truthful biographical information on the

26  ZigZagLive website and demanding payment in addition to sponsorship payments that had been

27  made to Galactic Funk as part of the concert tours.  Id. ¶¶ 40, 41.  Counsel's letter included a

28  demand for additional payment, and stated:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

Our offer will remain open until April 4, 2008.  If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likenesses and biographies by a tobacco company so as to mitigate any further damages to their reputation.  My clients will also file suit in California and Oregon (I am licensed in both states).

Ballard Dec. ¶ 4.

The parties were unable to resolve their differences after corresponding and speaking by phone on April 4.  Ballard Dec. ¶ 6, Ex. 2 Am. Compl. ¶ 45.  To NTC's knowledge, Plaintiffs have not issued any public statements decrying NTC's use of their likeness.  To NTC's knowledge, neither Plaintiffs nor Blackalicious have filed suit in Oregon.  In the interest of exercising its legal rights to resolve the controversy, and after settlement discussions failed to resolve the matter, NTC filed a complaint in the United States District Court for the Southern District of New York on the evening of April 4, 2008 (the "New York Action") seeking a declaratory judgment that NTC had not infringed Plaintiffs' trademarks, rights of publicity, or other common law rights.  Ballard Dec. ¶ 7.  NTC sent Plaintiffs' counsel a copy of the file-stamped Complaint in the New York Action on April 7.  Id. ¶ 8.  After receiving the Complaint in the New York Action, Plaintiff's counsel responded that "instead of facing claims by 3 groups [plaintiffs and Blackalicious], your client will now likely be facing claims by 30-40 groups.  *My clients have contacts with nearly every artist that appeared on the site.*"  Ballard Dec. ¶ 8, Ex. 2 Am. Compl. Ex. 4 (emphasis added).  NTC took this threat seriously, as counsel now stated that his clients intended to contact the other "30-40" bands on the website and defame NTC or encourage them to bring lawsuits.  NTC filed an amended complaint on April 9, 2008 to add additional New York state tort claims based on this correspondence with counsel.  Ballard Dec. ¶ 9, Ex. 2.

## D.    Plaintiffs' California Actions

On April 11, 2008, a full week after NTC had filed the New York action, counsel for Plaintiffs filed two separate Complaints against NTC in this Court.  Ballard Dec. ¶ 10, Ex. 3, 4.  The instant action listed Boots Riley and the members of Lifesavas as Plaintiffs, and the other, Case No. C08-01933 (WHA) identified the members of Blackalicious as plaintiffs (together, the "California Actions").  In combination, the California Actions include identical parties to those in the New York Action and involve nearly identical issues, based on identical facts, to those raised in the New York

5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

1  Action. Other than the fact that some, but not all, of the Plaintiffs reside in California (Plaintiff

2  Marlon Irving resides in Portland, Oregon) Plaintiffs have not alleged any event relating to the

3  dispute that occurred in California.

4                                    IV.    **ARGUMENT**

5  A.    **NTC's Suit was the "First-Filed" Action, and Involves Identical Parties and Issues.**

6            There is a well-recognized rule of federal comity that provides a district court with the

7  discretion to dismiss, stay or transfer an action when a complaint involving the same parties and

8  issues has already been filed in another district. Pacesetter Systems, Inc. v. Medtronic, Inc., 678

9  F.2d 93, 95 (9th Cir. 1982), Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir.

10  1991). This "first to file" rule is intended to promote judicial efficiency, the conservation of judicial

11  resources and the comprehensive disposition of litigation and is not meant to be "disregarded

12  lightly." 678 F.2d at 95.

13            1.    **A Dismissal or Stay in California is Appropriate Under the First to File Rule.**

14            Courts in the Ninth Circuit analyze three factors in determining whether to apply the "first

15  filed" rule: (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the

16  similarity of the issues." Palantir Technologies, Inc. v. Palantir.net, Inc., 2007 U.S. Dist. LEXIS

17  76830, *1 (N.D. Cal. 2007)(finding that a defendant's threat to take legal action in the event an

18  amicable resolution could not be reached was not a sufficiently "imminent" lawsuit to prevent

19  application of the first-to-file rule and denying defendant's motion to dismiss the first-filed case);

20  946 F.2d at 625. Where the parties and issues are identical or similar, courts favor dismissing or

21  staying the later-filed action.

22            All three factors in this case favor dismissing or staying the later-filed California Actions.

23  NTC filed a Complaint in the Southern District of New York on April 4, 2008. NTC amended its

24  complaint on April 9, 2008 to address additional claims caused by Plaintiffs' counsel's

25  correspondence related to the filing of the lawsuit. Am. Compl. Ex. 4. On April 11, 2008, a week

26  after NTC's complaint was filed, Plaintiffs filed this action against NTC. Ballard Dec. ¶ 10, Ex. 3.

27  On the same day, in this same Court, Plaintiffs' counsel filed another action based on the same

28  dispute against NTC on behalf of the members of the group Blackalicious. Ballard Dec. ¶ 10, Ex. 4

                                                        6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

The parties to the New York Action and the California Actions are identical.  The New York Action involves NTC as plaintiff and the members of Blackalicious (Timothy Parker and Xavier Mosley), the members of Lifesavas (Solomon David and Marlon Irving), and Raymond Riley (p.k.a. Boots Riley) as defendants. Ballard Dec., Ex. 2 Am. Compl.  Three of the five defendants in the New York Action are the plaintiffs in this action against defendant NTC, the plaintiff in the New York Action.  The remaining two defendants in the New York Action filed another case in this Court on the same date this case was filed, through the same counsel, and likewise named NTC as the sole defendant.  Ballard Dec. ¶ 10, Ex. 2 Am. Comp. ¶¶ 1-4, Ex. 3 [Riley Complaint] ¶¶ 3-5; Ex. 4 [Blackalicious Complaint] at ¶¶3-4.

The New York Action contains essentially all of the  issues presented in the California Actions.  Factually, the New York Action and the California Actions turn on NTC's ZigZagLive tour and sponsored concerts in November 2007 delineated in the Agreement governing Plaintiffs' performances.  The cases both turn on Plaintiffs' participation, and NTC's accurate and truthful use of Plaintiffs' likenesses on its website.  See Ballard Dec. Ex. 2, Am. Compl. ¶¶ 17-19, 30-40 and Ex. 4; Ex. 3 [Riley Complaint] ¶¶ 9, 11-14; Ex. 4 [Blackalicious Complaint] ¶¶ 7, 9-10.  The New York Action and the California Actions address trademark infringement allegations arising under 15 U.S.C. §1125 based on those same disputed facts.  Ballard Dec. Ex. 2, Am. Compl. ¶¶ 54-58; Ex. 3 [Riley Complaint] ¶¶ 19-23; Ex. 4 [Blackalicious Complaint] ¶¶ 13-17  Both actions also address misappropriation claims made under Cal. Civ. Code §3344, again arising out of the same factual issues.  Ballard Dec. Ex. 2 Am. Compl. ¶¶ 54-58; Ex. 3 [Riley Complaint] ¶¶ 24-32; Ex. 4 [Blackalicious Complaint] ¶¶ 18-26.  Plaintiffs' unfair business practices claim under Cal. Bus. & Prof. Code §17200, the only legal theory not specifically addressed in the New York Action, alleges no facts other than those already identified, and in fact is derivative of the legal claims also contained in the New York Action: "National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal. Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful business practices."   Ballard Dec. Ex. 3 [Riley Complaint] ¶ 35; see also Ballard Dec. Ex. 4 [Blackalicious Complaint] ¶ 29.   The California Actions, including this action, address identical issues to those raised in the first-filed New York Action.

2.    **No Exception to the First to File Rule Applies to Prevent Dismissal of this Action.**

While the first filed rule should not be "lightly disregarded", a court may choose not to apply the first-filed rule where a suit was brought in bad faith, where the suit was brought as an "anticipatory suit," or where the party was "forum shopping". Alltrade, 946 F.2d at 628. None of these exceptions applies to NTC's earlier filed New York Action.

NTC's suit was not brought in bad faith. Bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." North American Cas. Ins. Co. v. Encompass Power Serv., Inc., 2005 U.S. Dist. LEXIS 33314, *16 (E.D. Cal. 2005)(court failed to find first-filed suit undertaken in bad faith, when suit was not anticipatory and there were reasonable justifications for litigation strategy in first suit). There were reasonable justifications for NTC's litigation strategy of filing first in New York, and the action was not filed in bad faith. NTC filed in the forum designated by the forum selection clause in the Agreement governing this dispute, in the location with the most substantial connection to the events at issue, including execution of the Agreement, the venue of the NTC-sponsored musical performances at issue in this dispute, and the signatory agents for both sides.

Forum shopping has been found where the forum chosen for suit "bears only a slight connection to the action." Toy Biz v. Centuri Corp., 990 F. Supp. 328, 332 (S.D.N.Y. 1998)(court found no indication of forum shopping when party brought suit in jurisdiction of their principal place of business, and subject matter of litigation involved sales of goods in that jurisdiction). For the reasons described above, NTC's choice to file a complaint in New York is not, and cannot be regarded as forum shopping.

Finally, NTC's New York Action cannot be characterized as an "anticipatory suit" because there was nothing more than the threat that a complaint may be filed prior to its filing. To be considered an "anticipatory suit" there first must be "specific, concrete indications that a suit […] was imminent." Palantir Technologies, 2007 U.S. Dist. LEXIS 76830 at *2. Those "specific" and "concrete" indications must mean more than mere communications about possible filings. Communications indicating that a complaint "may be filed" by a certain date do not meet the

8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

"imminence" requirement. Id. at *4. Palantir Technologies refused to find an exception to the first-filed rule where Palantir.net threatened to take legal action if an amicable settlement was not reached, but did not specify a date certain for filing, nor did it transmit to its adversary a complaint it proposed to file. Id. at *2-3, *4. The facts of this case match with those of Palantir Technologies. Counsel for Plaintiffs threatened to take legal action if NTC refused to pay Plaintiffs, but did not attach a draft complaint, nor did he specify a certain date by which the supposed complaint was to be filed. Ballard Dec. ¶ 4.

Palantir Technologies followed Sony Computer Entm't America, Inc. v. America Medical Response, Inc., 2007 U.S. Dist. LEXIS 24294, 2007 WL 781969 (N.D. Cal. March 13, 2007) in refusing to disregard the first-to-file rule. Palantir Technologies described the situation in Sony, as follows:

> After rejecting the plaintiff's first settlement proposal, the defendant invited the plaintiff to make another offer. At the same time, the defendant provided the plaintiff with a draft complaint and threatened to file an infringement action by a specific date if the plaintiff did not cease using its mark or offer a much-improved settlement offer. Exactly one business day after the deadline passed, the plaintiff filed its declaratory judgment action in the Northern District of California.

Palantir Technologies, 2007 U.S. Dist. LEXIS 76830 at *3 (citations omitted). Sony itself stated that "because Defendant's deadline in the April letter passed with no action by Defendant, Plaintiff could not be certain whether Defendant's threat of suit in the October letter was idle, real, or a negotiating tactic." Id. at *7-8.

Palantir Technologies and Sony dictate the result in this case. Here, Plaintiffs' counsel provided no firm deadline by which plaintiffs would file suit; to the contrary, he stated concerning his settlement proposal that "[o]ur offer will remain open until April 4, 2008. If we have not settled this matter by then, my clients will have no choice but to issue public statements . . . ." Ballard Dec. ¶ 4, March 28 letter (emphasis added). No date was set for the threatened suits to be filed "in California and Oregon." Plaintiffs' subsequent failure to file suit for a full week after April 4 belies the notion that the April 4 date for holding the settlement offer open was intended to be a clear deadline for filing suit. Plaintiffs' vacillation regarding the venue for their suits – no suit has been filed in Oregon – further underscores that the threatened suit was, at that time, only a negotiating

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

tactic. Additionally, Plaintiffs filed this suit – thousands of miles from the concert appearances in question and the venue selected in the sponsorship contract – in an attempt to gain an advantage in the litigation.

**B.    The Sponsorship Agreement Contains a Valid Forum Selection Clause that Mandates a New York Forum for All Disputes.**

Where a plaintiff files a case in the improper venue a district court must dismiss such an action under Fed. R. Civ. P. 12(b)(3), or if it is in the "interest of justice," transfer the action to a district court where it could have been brought.  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996); 28 U.S.C. §1406(a); District No. 1, Pacific Coast District v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982).  Indeed, where there is a forum selection clause, which this Circuit considers "*prima facie* valid," it should be enforced absent a strong showing that enforcement would be "unreasonable or unjust" and that "trial in the contractual forum would be so gravely difficult and inconvenient" that it would deprive the opposing party of its day in court. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F. 2d 509, 514-15 (9th Cir. 1988).  Once venue is challenged, the burden is on the plaintiff to show that venue is proper.  Koresko v. Realnetworks, Inc., 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003); Nautilus, Inc. v. Gately's LLC, 2006 U.S. Dist. LEXIS 91916, *8 (W.D. Wa. 2006).  As the Plaintiffs are clearly bound by the forum selection clause in the Agreement, and as they cannot show that enforcement would essentially deprive them of their day in court, this case should be dismissed or transferred to the proper venue, which is the Southern District of New York.

**1.    The Agreement Between the Parties Provides that the Proper Venue for Adjudication of All Disputes is in the Courts of New York.**

In this matter, proper venue lies in the courts of New York.  The Agreement which was signed by Galactic Funk's manager, provides:

> This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. Each party hereby irrevocably submits that the proper forum for any action of any type, whether legal or equitable in nature, brought by either party to this Agreement, which action arises from or is related to any provision of this Agreement, shall be deemed to be under the jurisdiction of the courts of the State of New York, sitting in New York County, and the courts of the United States of America for the Southern District of New York.

10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

1    Ballard Dec. Ex. 2 Am. Compl. ¶ 9, McDonald Dec. Ex. A.

2         This action is clearly one involving the parties to the Agreement, which arises from and is

3    related to a provision of the Agreement, and therefore should properly be heard in New York.

4    Though the Agreement was not signed by Boots Riley or the Lifesavas themselves, it was signed by

5    Mr. Peck, the manager of Galactic Funk Touring.  Pursuant to that agreement, Peck provided

6    graphics for and approved artwork, text, and showbills for the 2007 ZigZagLive tour, both orally and

7    in writing to NTC, on behalf of Galactic, Boots Riley and Lifesavas.  McDonald Dec. ¶¶2-4, Ex. B,

8    C; Ballard Dec. Ex. 2 Am. Compl. ¶¶ 26-28.  In turn, NTC relied in good faith on Peck's approval in

9    continuing to advertise the concert dates for all involved artists.  McDonald Dec. ¶ 8.  Plaintiff Boots

10   Riley and Plaintiffs Solomon David and Marlon Irving of Lifesavas performed as part of Galactic

11   Funk during the NTC-sponsored tour, and never challenged Peck's ability to contract on their behalf,

12   presented their own management, or otherwise indicated that Peck did not have authority to act on

13   their behalf.  Chane Dec. ¶ 2, 6; McDonald Dec. ¶ 5, 7-8.  See Minskoff v. American Express Travel

14   Related Servs. Co., No. 94 Civ. 967, 1995 U.S. Dist. LEXIS 12930, at *12 (S.D.N.Y. Sept. 6, 1995)

15   (holding that a party's detrimental reliance in good faith on intentional acts by a purported principal

16   and its purported agent which create the appearance of authority constitute agency by estoppel,

17   regardless of whether the purported agent was actually granted agency by the principal); see also,

18   C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc., 213 F.3d 474, 479 (9th Cir. 2000) (noting

19   that an agent acting within his apparent or ostensible authority binds the principal where the

20   principal has intentionally or negligently allowed others to believe the agent has authority).  Thus,

21   the Plaintiffs are, and should be, bound by the forum selection clause in the Agreement.

22         Further, Plaintiffs are bound by the forum selection clause, regardless of whether Peck signed

23   the Agreement as their agent, because their conduct was "so closely related to the contractual

24   relationship that the forum selection clause applies" to this dispute.  Manetti-Farrow, Inc., 858 F. 2d

25   at 514 n.5.  But for the Agreement, Plaintiffs never would have appeared on the ZigZagLive tour,

26   and but for the Agreement, NTC would never have believed it was entitled to place their likenesses

27   and information on the www.zigzaglive.com website.  Plaintiffs' causes of action for

28   misappropriation of right of publicity, unfair competition and false designation of origin cannot be

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

1    resolved by this court without reference to the Agreement, because the Agreement defines NTC's

2    rights regarding information, photographs, and advertising used in relation to its concerts.  Where

3    claims cannot be resolved without interpreting an agreement that contains a forum selection clause,

4    the forum selection clause applies to those claims.  See Manetti-Farrow, 858 F.2d at 514 ("The

5    claims cannot be adjudicated without analyzing whether the parties were in compliance with the

6    contract. Therefore, because the tort causes of action alleged by [Plaintiff] relate to the 'central

7    conflict over the interpretation' of the contract, they are within the scope of the forum selection

8    clause."); see also Graham Technology Solutions, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427,

9    1433 (N.D. Cal. 1997) (holding that where resolution of copyright infringement claims depended on

10    interpretation of personal services agreement between defendant and third party, forum selection

11    clause in agreement applied); First Specialty Ins. Corp. v. Admiral Ins. Co., No. 07 Civ. 408, 2007

12    U.S. Dist. LEXIS 50714, at *5 (D. Or. June 22, 2007).

13         Additionally, Plaintiffs' participation with the named entity in the Agreement, to appear on

14    the NTC-sponsored tour, dictates that the forum selection clause governing disputes resulting from

15    Galactic Funk Touring group's Agreement with NTC is applicable to Plaintiffs.  Here, NTC is

16    arguing that Plaintiffs are actually bound by the manager Peck's signature on the Agreement, but

17    even if they were deemed to be "non-signatories" to the Agreement, their conduct and working

18    together and with Galactic on the ZigZagLive tour subjects them to the forum selection clause in the

19    Agreement.

20         In Tolentino v. Mossman, No. 07 Civ. 1243, 2007 U.S. Dist. LEXIS 95717, at *22 (E.D. Cal.

21    Dec. 13, 2007), the court held that where the non-signatories to an agreement containing a forum

22    selected clause acted in concert with parties that did sign the agreement pursuant to an "agreement

23    among themselves to work together, to perform various functions and services" which resulted in the

24    plaintiff's injury, the conduct of the non-signatories was "closely related" enough to cause the forum

25    selection clause to be applicable to the causes of action against them.  Id.  Such is the case here.

26    Plaintiffs clearly agreed with Galactic to perform as a part of Galactic's band on the ZigZagLive

27    tour, which in turn, resulted in NTC posting related publicity on its website, pursuant to its

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

12

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

1    Agreement with Galactic, which resulted in the present action.  Plaintiffs' conduct is "closely

2    related" enough to cause the forum selection clause in the Agreement to apply.

3         These Plaintiffs are thus all bound by the terms of the Agreement to adjudicate their disputes

4    in the courts of New York, and any venue outside of New York is improper.

5         **2.    Alternatively, Transfer of the Action to New York is Warranted under 28 U.S.C.
           §1406(a), as the Action Could be Brought in New York and such a Transfer
6          Would Promote Judicial Economy and the Interests of Justice.**

7         Transferring an action is appropriate where the transfer would support the interests of judicial

8    economy, and where the transfer would not result in any great injustice to the plaintiff in the

9    transferor court.  Goldlawr v. Heiman, 369 U.S. 463, 467 (1962); King v. Russell, 963 F.2d 1301,

10   1303-04 (9th Cir. 1992).

11        To effect the transfer, the transferor court must have subject matter jurisdiction over an

12   action, but need not have personal jurisdiction over the defendant.  Bookout v. Beck, 354 F.2d 823,

13   825 (9th Cir. 1965).  The transferee court must be a district where the action "could have been

14   brought," and should meet the following criteria: (1) have proper subject matter jurisdiction over the

15   action; (2) be the proper venue; and (3) defendant would be subject to personal jurisdiction in that

16   district.  Shapiro v. Bonanza Hotel Co., 185 F.2d 777, 780 (9th Cir. 1950)(interpreting similar

17   language in statute governing "convenience transfers," 28 U.S.C. §1404(a)).

18        The Southern District of New York, Defendant NTC's desired transferee court, meets the

19   necessary criteria for granting a transfer and is a court where the action not only "could have been

20   brought" under the meaning of §1406(a), but indeed is where it should have been brought.  The

21   Southern District of New York has proper subject matter jurisdiction over Plaintiff Riley's

22   complaint, as the complaint raises a federal question under the Lanham Act (15 U.S.C. §1125) and

23   there is diversity between the parties pursuant to 28 U.S.C. §1332.  Furthermore, as the parties

24   agreed to the forum selection clause in their Agreement, the Southern District of New York is the

25   proper venue to adjudicate all disputes.  NTC, Defendant in the California complaint, is subject to

26   personal jurisdiction in New York because of their Agreement with Plaintiffs and their numerous

27   business contacts to the state.

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Transferring the action to New York would serve the interests of justice by allowing efficient adjudication of the dispute between the parties. NTC first filed an action raising the same issues in the Southern District of New York prior to this suit. The claims raised in both jurisdictions involve identical parties, and arise out of the same transactions between the parties. Rather than allowing two district courts to adjudicate the identical dispute, transferring this case would allow one district court to oversee these substantially identical proceedings, and promote an efficient use of the judicial resources that are expended in discovery and other pre-trial proceedings.

**C.    Transfer is Warranted Under 28 U.S.C. §1404(a).**

A district court is permitted to transfer an action to another district for the "convenience of parties, witnesses and in the interest of justice." 28 U.S.C. §1404(a). The transferee court must be a district where the action "might have been brought," and should meet the following criteria: (1) have proper subject matter jurisdiction over the action; (2) be the proper venue; and (3) defendant would be subject to personal jurisdiction in that district. Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).

**1.    The Southern District of New York Is A Proper Court**

In the present action, all the necessary criteria for granting a transfer are met. The Southern District of New York has proper subject matter jurisdiction over Plaintiffs' complaint, as the complaint raises a federal question under the Lanham Act (15 U.S.C. §1125) and there is diversity between the parties pursuant to 28 U.S.C. §1332.

The Southern District of New York, NTC's desired transferee court, is a court where the action "might have been brought" under the meaning of §1404(a). The Southern District of New York possesses proper subject matter jurisdiction, as there is both a federal question and diversity between the parties. Furthermore, venue in the Southern District of New York is proper under 28 U.S.C. §§1391(b) and (c) since many of the transactions in question occurred in New York. NTC is obviously subject to personal jurisdiction in New York given the Agreement, its presence there, and its promotional and marketing efforts in New York.

**2.    New York is the More Convenient Forum.**

The convenience of a particular forum for witnesses favors transferring venue to the more convenient forum. See, A.J. Industries, Inc. v. United States Dist. Ct., 503 F.2d 384, 389 (9th Cir.

14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

1    1974).  Here, New York presents the more convenient forum for a number of reasons.  The

2    operations of ZigZagLive are based in New York.  Additionally, New York is clearly the venue that

3    is more convenient to the witnesses and parties, considering the various third parties likely to be

4    called as witnesses, including but not limited to CMJ and Paul Peck, are located in New York.

5        Transferring the action to New York would also serve the interests of justice, by promoting

6    judicial economy and allowing efficient adjudication of the dispute between the parties.  See, Van

7    Dusen v. Barrack, 376 U.S. 612, 616 (1964).  NTC filed an action raising substantially similar

8    claims in the Southern District of New York, prior to this suit.  The claims raised in both

9    jurisdictions involve identical parties, arise out of the same transactions between the parties, and

10   involve nearly identical issues.  Transferring the action to the Southern District of New York would

11   allow consistent oversight of related proceedings and conserve judicial resources.

12       **3.    The Interests of Justice Favor Transferring an Action to the Forum Designated
             by a Valid Forum Selection Clause.**

13

14       Where there is an enforceable forum selection clause, courts have been inclined to grant

15   convenience transfers under §1404(a).  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988);

16   P&S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003).  A party

17   resisting transfer to a forum specified in a contract must demonstrate "exceptional facts" showing

18   that a transfer would be inappropriate.  Stonehenge, Ltd. v. Garcia, 989 F. Supp. 539, 541-42

19   (S.D.N.Y. 1998)(finding that no exceptional facts weighed against transferring action to California

20   when that forum was more convenient for parties and witnesses, and when dispute arose out of

21   transactions in California).

22       As discussed above, there is an enforceable forum selection clause that requires the parties to

23   the Agreement to litigate their disputes in New York, and there are no exceptional circumstances that

24   would prevent transferring this action in keeping with the forum selection clause.

25   ///

26   ///

27   ///

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

15

Case No C-08-01931 JSW
NOTICE OF MOTION AND MOTION BY DEF. NATIONAL TOBACCO TO TRANSFER/DISMISS OR STAY

## V.    <u>CONCLUSION</u>

For the foregoing reasons, NTC respectfully requests that the Court grant their motion to dismiss, stay or transfer the present action in favor of the first-filed case in the Southern District of New York; or in the alternative, grant their motion to dismiss or transfer for improper venue; or in the alternative, grant a transfer of the action for the convenience of the parties and witnesses.

Dated:  May 5, 2008

BAKER & McKENZIE LLP
BRUCE H. JACKSON


By:  /s/_____
        Bruce H. Jackson
Attorneys for Defendant
NATIONAL TOBACCO COMPANY, LP

NYCDMS/1085563.7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000