1    Bruce H. Jackson, State Bar No. 98118
      bruce.h.jackson@bakernet.com
2    **BAKER & McKENZIE LLP**
     Two Embarcadero Center, 11th Floor
3    San Francisco, CA  94111-3802
     Telephone: +1 415 576 3000
4    Facsimile:  +1 415 576 3099

5    Attorneys for Defendant
     NATIONAL TOBACCO COMPANY, LP

6

7

8                   UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12   RAYMOND RILEY p.k.a. Boots Riley,          **Case No.  C-08-01931 JSW**
     SOLOMON DAVID and MARLON IRVING
13   p.k.a. Lifesavas,                          **DECLARATION OF BRUCE H.
                                                JACKSON IN SUPPORT OF
14        Plaintiffs,                           ADMINISTRATIVE MOTION BY
                                                DEFENDANT NATIONAL TOBACCO
15        v.                                    COMPANY TO CONSIDER
                                                WHETHER CASES SHOULD BE
16   NATIONAL TOBACCO COMPANY LP,               RELATED**

17        Defendant.                            **[Local Rule 3-12(b)]**

18                                              **Before: The Honorable Jeffrey S. White**

19                                              **[FILED VIA E-FILING]**

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6547570.1

Case No C-08-01931 JSW
DECL IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

I, Bruce H. Jackson, declare as follows:

1.      I am a partner at the law firm of Baker & McKenzie LLP in San Francisco, California and I am admitted to practice before this Court. I am counsel for Defendant National Tobacco Company LP in <u>Raymond Riley, et al. v. National Tobacco Company LP</u>, United States District Court for the Northern District of California, Case No. C-08-1931 JSW. I submit this Declaration in support of Defendant National Tobacco Company's ("NTC") Administrative Motion to Consider Whether Cases Should be Related.

2.      On April 11, 2008, Plaintiffs Raymond Riley, Solomon David and Marlon Irving filed their complaint in this action, whereby they brought the following claims against NTC: trademark violations under 15 U.S.C. § 1125, misappropriation claims under Cal. Civ. Code § 3344, and unfair competition claims under Cal. Bus. and Prof. Code § 17200. The <u>Riley</u> complaint is the earliest-filed action in this Court. Attached hereto as **Exhibit A** is a true and correct copy of the <u>Riley</u> complaint.

3.      On the same day, April 11, 2008, Plaintiffs Timothy Parker and Xavier Mosley filed a complaint in this court, captioned <u>Timothy Parker and Xavier Mosley v. National Tobacco Company LP</u>, United States District Court for the Northern District of California, Case No. C 08-01933 WHA, whereby they brought the same trademark, misappropriation and unfair competition claims brought by the Riley plaintiffs against NTC. Attached hereto as **Exhibit B** is a true and correct copy of the <u>Parker</u> complaint.

4.      Defendant NTC has filed motions to dismiss, stay or transfer both actions on the grounds of a first-filed action in the Southern District of New York.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May 2, 2008 at San Francisco, California.

/s/ Bruce H. Jackson
BRUCE H. JACKSON

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6547570.1

Case No C-08-01931 JSW
DECL IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

# EXHIBIT A

E-filing

**ANTHONY E. MCNAMER CSB #178911**
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon 97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

FILED

APR 11 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADR

EMC

| | |
|---|---|
| **RAYMOND RILEY** p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas <br><br> **PLAINTIFFS**, <br><br> v. <br><br> **NATIONAL TOBACCO COMPANY, LP** <br><br> **DEFENDANT.** | Case No. **C08-01931** <br><br> **COMPLAINT FOR:** <br><br> 1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)** <br> 2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)** <br> 3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 *et. seq.*)** <br><br> **DEMAND FOR JURY TRIAL** |

NOTICE OF ASSIGNMENT TO MAGISTRATE JUDGE SENT

r their complaint against Defendant, Plaintiffs allege as follows:

**I.**

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

ises under the unfair competition laws of the United States.   The Court also has jurisdiction

ursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT

EXHIBIT 

amount in controversy exceeds $75,000.

2.      This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.      Plaintiff Raymond Riley is a resident of Alameda County, California and is

professionally known as Boots Riley.

4.      Plaintiff Solomon David is a resident of Alameda County, California and Plaintiff

Marlon Irving is a resident of Portland, Oregon, and they are professionally known as the

musical group Lifesavas

5.      Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

6.      Boots Riley is a musical artist and a co-founder of the musical group The Coup.

Boots Riley was raised amidst political action in Oakland, California, where, since the age of

fifteen, he's been involved in organizing and inspiring youth.  From student organizing in

Oakland's public schools, to serving on the central committee for the Progressive Labor Party, to

holding the presidential position for InCAR (International Committee Against Racism), and

organizing to build California's Anti-Racist Farm Workers' Union, Boots Riley has been an

Page 2 – PLAINTIFFS' COMPLAINT

integral part of a progressive struggle for positive change through culture and has used his music

as a medium to promote that change. Boots Riley's music and image presents a decidedly anti-

corporate message.

7.     Lifesavas are part of the positive hiphop movement. They are a musical group

who have built their career addressing such issues as politics, family, social justice, drug abuse,

religion and racial progress. Their music is conscientious and their image has always been about

motivating kids and adults to stay drug and alcohol free. Their music also encourages their fans

to be aware of the problems associated with such abuses.

8.     National Tobacco is a large tobacco company. Through a license, they are the

exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

9.     Beginning in April 2006, National Tobacco began an enormous national and

international marketing campaign centered on the website ZigZagLive.com (the "Website"). As

part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live

Club Tour (the "Tour"), which began in 2006 and continues to this day. On information and

belief, National Tobacco paid musical artists to sponsor and promote their products. National

Tobacco entered into agreements with sponsored artists granting National Tobacco specific

rights to use sponsored artists' names, likenesses, and biographies on the Website. These

sponsored and endorsing artists were featured prominently on the Website, and the Tour also

featured these sponsored artists along with other non-sponsored artists.

10.     On information and belief National Tobacco spent millions of dollars on this

ZigZagLive.com marketing campaign and continues to use the Website to promote its products.

Indeed, the ZigZag.com website contains almost no content. The Website, however, contains

substantial content and accounts for nearly all of Zig-Zag's web presence and branding.

Page 3 – PLAINTIFFS' COMPLAINT

11.    On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

12.    National Tobacco's products effectively represent a corporate ideology that puts profits above the public's health and well-being. Plaintiffs have never endorsed tobacco products, and would never endorse tobacco products.

13.    On or about October 17, 2007, National Tobacco began using Boots Riley's names, photograph and biography to promote Zig-Zag brand products on the Website. National Tobacco continued to use Boots Riley's name, photograph and biography to promote its products through April 4, 2008. A true and correct copy of the unauthorized Boots Riley promotional materials used by National Tobacco on the Website, which false identifies Boots Riley as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

14.    On or about October 25, 2007, National Tobacco began using Lifesavas' name, photograph and biographies to promote Zig-Zag brand products on the Website. National Tobacco continued to use Lifesavas' name, photograph and biographies to promote its products through April 4, 2008. A true and correct copy of the unauthorized Lifesavas promotional materials used by National Tobacco on the Website, which falsely identify Lifesavas as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit B.

15.    Given the message Plaintiffs have spread throughout their careers, the use of Plaintiffs' names, photographs and biographies to promote Big Tobacco's products and agenda is particularly damaging. Plaintiffs would never license use of their names, photographs and biographies to promote tobacco products. Lifesavas, for example, share the same view as the National Association of African-Americans for Positive Imagery, who has shown that the

Page 4 – PLAINTIFFS' COMPLAINT

African-American community has been exploited by tobacco companies. Indeed, significant research confirms that tobacco companies have specifically targeted the African-American community.

16.    Such apparent affiliation with, and sponsorship of, National Tobacco and its products has severely damaged Plaintiffs' reputation, as their fans now perceive Plaintiffs to be profiting from the sale of tobacco products.

17.    On information and belief, National Tobacco paid their sponsored musicians up to $5,000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

18.    During the period of National Tobacco's illegal use of Plaintiffs' names, photographs and biographies, Boots Riley performed 50 shows and Lifesavas performed 27 shows. Thus, had Boots Riley entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Boots Riley's right of publicity, National Tobacco would have paid approximately $250,000. Had Lifesavas entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Lifesavas's right of publicity, National Tobacco would have paid approximately $135,000.

## FIRST CAUSE OF ACTION

### False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

19.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 18, inclusive.

20.    National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to

Page 5 – PLAINTIFFS' COMPLAINT

cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with National Tobacco, and Plaintiffs' sponsorship or approval of National Tobacco's goods and commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. § 1125(a).

21.    National Tobacco's acts of unfair competition are willful and deliberate and are made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

22.    By reason of National Tobacco's acts of false designation, description and representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue and substantial damage to their reputation and goodwill.

23.    Additionally, National Tobacco has unfairly profited from the acts of false designation, description and representation as alleged above, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

24.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 23, inclusive.

25.    Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

26.    National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

27.    As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no

Page 6 – PLAINTIFFS' COMPLAINT

event less than $250,000 for Boots Riley and $135,000 for Lifesavas.

28.    National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights. Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

29.    National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

30.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

31.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

32.    The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

## THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)

33.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 32, inclusive.

34.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California

Page 7 – PLAINTIFFS' COMPLAINT

Bus. & Prof. Code § 17200 *et seq.*

35.    National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal. Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful business practices.

36.    National Tobacco acts of unfair competition have proximately caused and will continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be determined at trial.

37.    National Tobacco's acts of unfair competition have also caused and are causing irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL and demands judgment in their favor against Defendant as follows:

(i)    Plaintiffs' general, special and actual damages in a sum to be determined at trial but in no event less than: $250,000 to Boots Riley and $135,000 to Lifesavas;

(ii)    Defendant's profits pursuant to 15 U.S.C. § 1117, Cal. Civ. Code § 3344 and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages pursuant to Cal. Civ. Code § 3344;

(iii)    Judgment for punitive damages in a sum to be determined at trial;

(iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117 and Cal. Civil Code § 3344(a); and

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

(v)     Such other and further relief as the Court deems just and proper.


DATED:  April 11, 2008

MCNAMER AND COMPANY, PC


By _____
    Anthony E. McNamer, CSB #178911
    MCNAMER AND COMPANY, PC
    519 SW Third Avenue, Suite 601
    Portland, Oregon 97204
    Telephone: (503) 727-2500
    Facsimile: (503) 727-2501

        Attorneys for Plaintiffs

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500



back to top

## Boots Riley
*October 17th, 2007*

Boots Riley is a co-founding member, producer, songwriter, and arranger of the revolutionary hip-hop group the Coup, but Riley's penchant for activism and rebellious tactics go back to his teenage years. After organizing activist groups in his high school, Riley served on the central committee for the Progressive Labor Party, held the presidential seat on the International Committee Against Racism, and helped to organize the Anti-Racist Farm Workers' Union in California. In 1991, along with a group of fellow artists and political activists, Riley formed the Mau Mau Rhythm Collective, which held local hip-hop concerts to help promote awareness for the causes of civil liberties organizations such as the Women's Economic Agenda Project and various other anti-police brutality campaigns. As a result of these performances, the Coup was formed later that year, releasing their first album *Kill My Landlord* in 1993. *Genocide and Juice* followed in 1994, after which their label folded, and Riley went into retirement from music. He returned to music with the Coup in 1998, releasing *Steal This Album* that year and *Party Music* in 2001, which was rated "best rap album of the year" by several publications including *Rolling Stone*. *Pick a Bigger Weapon* came in 2006, freshly combining the outrage of Public Enemy with the grooves of the live musicianship found in classic Prince or Parliament/Funkadelic records. Having made a guest appearance on

Exhibit A, 1 of 2



Exhibit A, 2 of 2



**Lifesavas**
October 27th, 2007

Portland, Oregon hip-hop duo Lifesavas met during a pick-up basketball game and quickly became aware of each other's rapping skills. MC Vursatyl and Producer/MC Jumbo the Garbageman recorded the single "Grand Larceny" under the title of Lifesavas and were subsequently picked up by label Quannum. They released their second single "Headexercise" for Quannum and did some extensive touring with labelmates Blackalicious. In 2003, Lifesavas released their debut album *Spirit in Stone*, which gave the hip-hop community a glimpse of their unique politically and spiritually conscious lyricism. The duo took a huge creative leap forward for their next release *Gutterfly*. Lifesavas created the idea of a never completed blaxploitation film of the same name, and told the un-made movie's story through its main characters Bumpy Johnson and Sleepy Floyd. The album describes the land of Razorblade City through positive vibes that recall early De La Soul, as well as grittier tracks that underline the racial profiling and violence of the fictional city. Look for these hip-hop visionaries on this November's Zig-Zag Live Tour with Galactic.

www.myspace.com/lifesavas

Exhibit B

# EXHIBIT B

ANTHONY E. MCNAMER CSB #178911
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon 97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

E-filing

FILED

APR 11 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY PARKER and XAVIER
MOSLEY p.k.a. Blackalicious

PLAINTIFFS,

v.

NATIONAL TOBACCO COMPANY, LP

DEFENDANT.

Case No. C08-01933 WHA

COMPLAINT FOR:

1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**
2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**
3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 et. seq.)**

**DEMAND FOR JURY TRIAL**

For their complaint against Defendant, Plaintiffs allege as follows:

I.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

arises under the unfair competition laws of the United States.    The Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

EXHIBIT B



amount in controversy exceeds $75,000.

    2.     This Court has personal jurisdiction over the defendants, and venue of this action is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from the transaction of business in California or, alternatively, out of a tortious act committed in California or with expected consequences within this state.

**II.**

**THE PARTIES**

    3.     Plaintiffs Timothy Parker and Xavier Mosely reside in Alameda County, California and are professionally known as the musical group Blackalicious.

    4.     Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware limited partnership doing business at all times within the Alameda County in the State of California.

**III.**

**FACTUAL ALLEGATIONS**

    5.     Blackalicious is a seminal indie hip hop group. Blackalicious has always been at the forefront of the "positive" rap movement. Their lyrics are often spiritual, introspective and uplifting rather than violent or misogynistic.

    6.     National Tobacco is a large tobacco company. Through a license, they are the exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

    7.     Beginning in April 2006, National Tobacco began an enormous national and international marketing campaign centered on the website ZigZagLive.com (the "Website"). As part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live Club Tour (the "Tour"), which began in 2006 and continues to this day. On information and

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

belief National Tobacco paid musical artists to sponsor and promote their products. National Tobacco entered into agreements with sponsored artists granting National Tobacco specific rights to use sponsored artists' names, likenesses, and biographies on the Website. These sponsored and endorsing artists were featured prominently on the Website, and the Tour also featured these sponsored artists along with many other non-sponsored artists. Blackalicious never played a single date on the Tour, either as a sponsored artist or on a bill with a sponsored artist.

8.    On information and belief National Tobacco spent millions of dollars on this ZigZagLive.com marketing campaign and continues to use the Website to promote its products. Indeed, the ZigZag.com website contains almost no content. The Website, however, contains substantial content and accounts for nearly all of Zig-Zag's web presence.

9.    On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

10.    On or about June 12, 2006 National Tobacco began using Blackalicious's name, photograph and biography to promote Zig-Zag brand products on the Website. National Tobacco continued to use Blackalicious's namejune, photograph and biographies to promote its products through April 4, 2008. A true and correct copy of the unauthorized Blackalicious promotional materials used by National Tobacco on the Website, which falsely identifies Blackalicious as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

11.    On information and belief National Tobacco paid their sponsored musicians up to $5000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

12.    During the period of National Tobacco's illegal use of Plaintiffs' names,

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

photographs and biographies, Blackalicious performed 57 shows. Thus, had Blacklicious entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Blacklicious's right of publicity, National Tobacco would have paid approximately $285,000.

**FIRST CAUSE OF ACTION**

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

13.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 12, inclusive.

14.    National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with National Tobacco and Plaintiffs' sponsorship, or approval of National Tobacco's goods and commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. § 1125(a).

15.    National Tobacco's acts of unfair competition are willful and deliberate and are made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

16.    By reason of National Tobacco's acts of false designation, description and representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue and substantial damage to their reputation and goodwill.

17.    Additionally, National Tobacco has unfairly profited from the acts of false designation, description and representation as alleged above, in an amount to be determined at trial.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

18.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 17, inclusive.

19.    Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

20.    National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

21.    As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no event less than $285,000.

22.    National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights.  Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

23.    National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

24.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

25.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial

Page 5 – PLAINTIFFS' COMPLAINT

use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

26.     The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

### THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.)*

27.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 26, inclusive.

28.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California Bus. & Prof. Code § 17200 *et seq.*

29.     National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal. Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful business practices.

30.     National Tobacco acts of unfair competition have proximately caused and will continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be determined at trial.

31.     National Tobacco's acts of unfair competition also have caused and are causing irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

### PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL and demands judgment in their favor against Defendant as follows:

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

(i)    Plaintiffs' general, special and actual damages in a sum to be determined at trial but in no event less than $285,000;

(ii)    Defendant's profits pursuant to 15 U.S.C. § 1125, Cal. Civ. Code § 3344 and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages pursuant to Cal. Civ. Code § 3344;

(iii)    Judgment for punitive damages in a sum to be determined at trial;

(iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to Cal. Civil Code § 3344(a); and

(v)    Such other and further relief as the Court deems just and proper.

DATED:  April 11, 2008

MCNAMER AND COMPANY, PC

By _____
**Anthony E. McNamer,** CSB #178911
**MCNAMER AND COMPANY, PC**
519 SW Third Avenue, Suite 601
Portland, Oregon 97204
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

Page 7 – PLAINTIFFS' COMPLAINT