**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

　　　Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>　　　　　**PLAINTIFFS**,<br><br>　　v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>　　　　　**DEFENDANT**. | **Case No. C-08-01931 JSW**<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

## <u>TABLE OF CONTENTS</u>

**Page No.**

MEMORANDUM OF POINTS & AUTHORITIES ..................................................... 1

I.  SUMMARY OF ARGUMENT. ........................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED. .................................. 2

III.  STATEMENT OF FACTS. ................................................................ 2

    A.  The Parties. ........................................................................ 2

    B.  The ZigZagLive.com Website. ......................................... 3

    C.  The New York Suit. ........................................................... 4

    D.  Relationship with Galactic. .............................................. 5

IV.  ARGUMENT .................................................................................. 6

    A.  The First-to-File Rule Does Not Apply. ........................... 6

        1.  National Tobacco's New York Suit is Anticipatory Forum Shopping. 7

        2.  The New York Suit is an Improper Use
           of the Declaratory Judgment Act. ........................... 8

    B.  New York Is Not a Proper Venue. ................................... 10

    C.  The Forum Selection Clause Does Not Bind Plaintiffs. ........ 11

    D.  Transfer Per 28 U.S.C. 1404(a) is Inconvenient for Plaintiffs and
        Unwarranted. ...................................................................... 14

V.  CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 627-28 (9th Cir. 1991) ............................. 7

*Berclain America Latina v. Baan Co.* N.V., 74 Cal. App. 4th 401, 407 (1999) ........................... 14

*C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.,*
  213 F.3d 474, 480 (9th Cir. 2000) .................................................................................. 11, 12

*Capitol Records, Inc. v. Optical Recording Corp.,* 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992)..... 7

*Graham Technology Solutions, Inc. v. Thinking Pictures,* Inc.,
  949 F. Supp. 1427, 1434 (N.D. Cal. 1997) .............................................................. 14

*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509. ...................................................... 14

*Palantir Technologies, Inc. v. Palantir.net, Inc.,*
  2007 U.S. Dist. LEXIS 24294 (N.D. Cal. 2007) ........................................................ 8

*Recoton Corp. v. Allsop, Inc.* 999 F. Supp. 574, 577 (S.D.N.Y. 1998) ........................................ 7

*Riviera Trading Corp. v. Oakley, Inc.,* 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996) ...................... 7

*Sony Computer Entertainment America Inc. v. America Medical Response, Inc.,*
  2007 U.S. Dist. LEXIS 76830 (N.D. Cal. 2007) ................................................ 8, 14

*Tolentino v. Mossman*, 2007 U.S. Dist. LEXIS 95717 (E.D. Cal. 2007) .................................... 14

*Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D. Cal. 1994) ..................................................... 6

*Xoxide, Inc. v. Ford Motor Co.,* 448 F. Supp. 2d 1188, 1193 (N.D. Cal. 2006) ................. 8, 9, 10

*Z-Line Designs, Inc. v. Bell'O International LLC,*
  218 F.R.D. 663, 665 (N.D. Cal. 2003).......................................................... 6, 7, 8, 9

**Statutes**

28 U.S.C. 1391(b)(2) ................................................................................................ 10

Cal. Civ. Code 2300................................................................................................ 11

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    SUMMARY OF ARGUMENT.

Plaintiffs are musical artists, specifically they are part of the indie hip hop movement. They have never had any substantive contact with Defendant National Tobacco Company LP. Plaintiffs did not, and would not, enter into a sponsorship agreement allowing National Tobacco to use their names, likeness and biographies to promote tobacco products (including Zig-Zag brand rolling papers).  When Plaintiffs discovered that National Tobacco was violating their rights of publicity by advertising them as sponsored "Zig-Zag Artists," Plaintiffs sent a cease and desist letter from California to Kentucky, National Tobacco's headquarters, giving National Tobacco until April 4, 2008 to cease all use of Plaintiffs' names, likeness and biographies and to pay Plaintiffs for the prior unauthorized use.   On April 4, 2008, National Tobacco filed a declaratory relief action in the Southern District of New York.

National Tobacco now moves to dismiss, stay or transfer this action in favor of the New York suit.

First, the New York suit is textbook anticipatory forum shopping.  It was filed on the same day of the deadline given by Plaintiffs.  It was filed before Plaintiffs' counsel spoke to National Tobacco's counsel.  The only relation these claims have to New York, is that National Tobacco's counsel has offices in New York.

Second, New York is not a proper venue for this action.  New York has nothing to do with Plaintiffs' claims.  National Tobacco's attempt to bind Plaintiffs to a forum selection clause in another band's contract borders on the absurd.  That contract is between CMJ (a third party service provider hired by National Tobacco) and Galactic Funk Touring, Inc. (the corporate form of the band Galactic).  Plaintiffs are not parties to that agreement.  Plaintiffs are not members of

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

the group Galactic.   Plaintiffs are not shareholders in Galactic Funk Touring, Inc.   Plaintiffs are

not managed by Galactic's manager, Paul Peck, and Mr. Peck has never purported to represent

Plaintiffs.   That Plaintiffs have played some shows with Galactic does not, and could not,

somehow turn Plaintiffs into members of Galactic or shareholders of Galactic Funk Touring, Inc.

or give Galactic's manager authority to bind Plaintiffs to a contract they did not even know

existed prior to this dispute.

## II.    STATEMENT OF ISSUES TO BE DECIDED.

1.    Whether Defendant's New York filing was anticipatory and forum shopping and

therefore is an exception to California's first-to-file rule.

2.    Whether the New York is a proper venue for the present action.

3.    Whether Galactic Funk Touring, Inc. is an agent for Plaintiffs.

4.    Whether the convenience of the Defendant outweighs the convenience of the

Plaintiffs filing where they reside enough to warrant transferring the present

action to New York under 28 U.S.C. 1404.

## III.    STATEMENT OF FACTS.

### A.    The Parties.

Raymond Riley is a resident of Oakland, California known professionally as Boots Riley

("Riley").   Raymond Riley Dec. ¶¶1-2.   Riley is a musical artist and co-founder of the hip-hop

musical group the Coup.   Riley has a significant background in organizing and inspiring youth in

his area.   He is an integral part of a progressive struggle for positive change through culture and

uses his music as a medium to promote that change.   Riley's music and image promote a

decidedly anti-corporate message.   Riley Dec. ¶3.   Riley is managed by Kenneth Erlick and has

been for several years.   *Id.* at ¶2.

Solomon David ("David") is a resident of Oakland, California.  Solomon David Dec. ¶1.
Marlon Irving ("Irving") is a resident of Portland, Oregon.  Marlon Irving Dec. ¶1.  David and
Irving perform together professionally in the musical group Lifesavas.  Lifesavas is also a part of
the positive hip-hop movement.  They built careers addressing such issues as politics, family,
social justice, drug abuse, religion and racial progress.  Lifesavas music is conscientious and
decidedly anti-substance abuse.  David Dec. ¶3; Irving Dec. ¶3.  The Lifesavas are managed by
Kenneth Erlick, and have been for several years.  David Dec. ¶2; Irving Dec. ¶2.

National Tobacco Company, LP ("National Tobacco") is a large tobacco company.
Through a license, it also is the exclusive United States distributor of Zig-Zag brand rolling
papers.  National Tobacco began an enormous national and international marketing campaign in
April of 2006, which included a national music tour entitled Zig-Zag Live Club Tour (the
"Tour").  National Tobacco pays musical artists to sponsor and promote its products on a website
located at the url ZigZagLive.com (the "Website").  The Website contains substantial content
and accounts for nearly all of National Tobacco's web presence and branding as Zig-Zag.  The
Tour, however, features sponsored artists as well as non-sponsored artists.

**B.      The ZigZagLive.com Website.**

Recently, Lifesavas discovered National Tobacco, through its Website, advertised
Lifesavas as a "sponsored" artist, *i.e.,* a "Zig-Zag Artist," who promoted and endorsed National
Tobacco's products.  David Dec. ¶7; Irving Dec. ¶7.  The information on the Website included
Lifesavas' member's names, photograph and biography.  *Id.*  The Lifesavas' "sponsorship" was
advertised on the Website from approximately October 25, 2007 through early April 2008.  *Id.*

On or about October 17, 2007, National Tobacco also began using Boots Riley's name,
photograph and biography to promote its Zig-Zag brand products on the Website.  Riley Dec. ¶7.

Boots Riley was also misleadingly identified as a "Zig-Zag Artist" who was sponsored by, endorsed and promoted National Tobacco's products. *Id.* Riley's "sponsorship" was advertised on the Website from approximately October 17, 2007 through early April 2008. *Id.*

Plaintiffs were confused, surprised and alarmed by their inclusion on the Website. Each Plaintiff personally, and in his profession, promotes a positive message to the community and individual. Riley Dec. ¶8; David Dec. ¶8; Irving Dec. ¶8. Riley specifically promotes a decidedly anti-corporate message, and given the known exploitation of the tobacco companies of the African-American community, Lifesavas would never license the use of their names, photographs and biographies to promote tobacco products. *Id.* National Tobacco's national and international use of Plaintiffs photographs, names and biography on its Website injures Plaintiffs reputation and ability to successfully perform in California, the Pacific Northwest and throughout the United States. Riley Dec. ¶12; David Dec. ¶12; Irving Dec. ¶12.

## C.    The New York Suit.

After discovery of their purported "sponsorship" by Zig-Zag and the violation of their publicity rights, Plaintiffs sought the advice of counsel. On March 28, 2008 Plaintiffs' counsel sent a letter from <u>California</u> to National Tobacco's headquarters in <u>Kentucky</u>. Dec. of Anthony McNamer ¶4. The letter outlined Plaintiffs' position regarding National Tobacco's false designation of origin under the federal trademark act, misappropriation of Plaintiffs' right to publicity under California common law, and unfair competition per the California Professional Code (the "Cease and Desist Letter"). The letter demanded National Tobacco cease use of Plaintiffs' names and likenesses on the Website, demanded recompense for the use, and stated the offer to settle would remain open until April 4, 2008. After that date, the Plaintiffs would file suit in California and Oregon. *See* McNamer Dec. ¶4, Ex. 1.

On April 4, 2008, the day of the deadline and prior to discussing the matter with Plaintiffs' counsel, National Tobacco filed a declaratory relief suit in New York. *See* McNamer Dec. ¶5, Ex. 4.[1]

Plaintiffs had no opportunity to file an infringement suit in a proper and convenient forum without unfairly violating the deadline they themselves imposed on National Tobacco. Plaintiffs filed the present matter on April 11, 2008. McNamer Dec. ¶6.

### D.    Relationship with Galactic.

Galactic is a five piece instrumental funk band from New Orleans consisting of drummer Stanton Moore, bassist Robert Mercurio, saxophonist/harmonica player Ben Ellman, keyboardist Richard Vogel, and guitarist Jeff Raineur.    Peck Dec. ¶2, Ex. 1.    Galactic's corporate form is Galactic Funk Touring, Inc.  Peck Dec. ¶1.   Galactic Funk is managed by Paul Peck ("Peck").  Riley, David and Irving have never been members of Galactic or shareholders in Galactic Funk Touring, Inc.  *Id.* at ¶¶5-6.    Peck has never managed Riley, David or Irving, and has never held himself out as their manager or agent.  *Id.* at ¶8.  Peck would never purport to enter into a sponsorship agreement on Plaintiffs behalf, and did not do so in relation to the current dispute.  *Id.* at ¶¶5-6.

Galactic was sponsored by National Tobacco (through Zig-Zag Live) and entered into an agreement in relation to that sponsorship.    *See* Ballard Dec., Ex. 2; Peck Dec. ¶7.    Riley and Lifesavas were not parties to that sponsorship agreement, and never saw or knew about the agreement prior to this dispute.  Riley Dec. ¶6; Irving Dec. ¶6; David Dec. ¶6.  Riley and the

---

[1] Plaintiffs received a letter via email from National Tobacco's attorney at approximately 7:50 PDT on April 4, 2008.  McNamer Dec. ¶5, Ex. 2.  Emails were exchanged arranging a time to discuss the matter and counsel discussed the matter at approximately 5:30pm EDT. *Id.* at ¶5. Unbeknownst to Plaintiff, National Tobacco had already filed suit in New York. *Id.* at ¶5.

Lifesavas are, however, friends with Galactic. Riley Dec. ¶4; Irving Dec. ¶4; David Dec. ¶4. Since Galactic is an instrumental group, they often have guest vocalists perform with them. Peck Dec. ¶4. Those guest vocalists do not somehow become member of Galactic. In fact, they are often members of other groups. Peck Dec. ¶4. Like any band, Galactic also has opening acts play prior to Galactic's performance. On occasion, Riley has been a guest artist and Lifesavas have been one of Galactic's opening acts. Riley Dec. ¶4; David Dec. ¶4; Irving Dec. ¶4.

At a November 17, 2007, show at the Roseland Theater, Lifesavas opened for Galactic and Riley was one of three guest artists who performed with Galactic. As the playbill for the show makes clear, Riley is a member of the group The Coup, and Chali 2 Na (another guest artist) is a member of the group Jurassic 5. *See* Marcella Ballard Dec., Ex. 1. None of the three guests artist are members of Galactic. Lifesavas is simply listed as the opening act. Since Galactic was the headlining act, Peck took care of the showbill. Peck Dec. ¶7. Lifesavas and Riley had no contact with National Tobacco before the show and only polite social interaction with the CMJ representatives during the evening. Riley Dec. ¶6; David Dec. ¶6; Irving Dec. ¶6. Lifesavas and Riley have not interacted with National Tobacco (or the Zig Zag Live reprsentatives) since that show. *Id.* Lifesavas and Riley's manager, Erlick, never has had any interaction with National Tobacco. Kenneth Erlick Dec. ¶3.

## IV.    ARGUMENT

### A.    The First-to-File Rule Does Not Apply.

The first-to-file rule gives a court the discretionary power to transfer, stay or dismiss an action when a similar complaint is filed in another federal court. *Z-Line Designs, Inc. v. Bell'O International LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003) citing *Ward v. Follett Corp.,* 158

F.R.D. 645, 648 (N.D. Cal. 1994). While the first-to-file rule should not be disregarded lightly, "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Z-Line Designs, Inc.,* 218 F.R.D. at 665, citing *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 627-28 (9th Cir. 1991). Three threshold factors determine the application of the rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Z-Line Designs, Inc.,* 218 F.R.D. at 665 citing *Ward,* 158 F.R.D. at 648.

### 1.    National Tobacco's New York Suit is Anticipatory Forum Shopping.

The first-to-file rule is not applied if the first suit amounts to bad faith, an anticipatory suit or forum shopping. *Z-Line Designs, Inc.,* 218 F.R.D. at 665. An anticipatory suit is filed in the face of receipt of specific, concrete indications that a suit is imminent. *Id.* Anticipatory suits are disfavored as they are an example of forum shopping. *Id.* Additionally, relatively short time periods between the filing of two similar cases diminishes the importance of an earlier filing date. *Id.* at 667 referencing *Recoton Corp. v. Allsop, Inc.* 999 F. Supp. 574, 577 (S.D.N.Y. 1998) (refusing to apply first-to-file rule where two days separated two actions); *Riviera Trading Corp. v. Oakley, Inc.,* 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996) (four days); *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (20 days).

National Tobacco filed its New York suit to forum shop and completely in anticipation of the present matter. Plaintiffs sent National Tobacco a letter on March 28, 2008 giving it until April 4, 2008 to accept an offer of settlement. After that date Plaintiffs state they "will file suit in Oregon and California." *See* McNamer Dec. ¶4, Ex. 1. National Tobacco contacted Plaintiffs' counsel on the day of the deadline. McNamer Dec. ¶5. Prior to even talking with Plaintiffs' counsel, National Tobacco filed suit in New York. McNamer Dec. ¶5.

National Tobacco's reliance on *Palantir Technologies, Inc. v. Palantir.net, Inc.,* 2007 U.S. Dist. LEXIS 24294 (N.D. Cal. 2007) and *Sony Computer Entertainment America Inc. v. America Medical Response, Inc.,* 2007 U.S. Dist. LEXIS 76830 (N.D. Cal. 2007) is misplaced. In *Sony,* parties to a suit attempted to resolve the dispute between them for over four months. In the last communication between the parties before the declaratory relief action was filed, the defendant declined an offer to settle and invited the plaintiff to make another offer. The defendant at the time stated it <u>might</u> file a suit if plaintiff did not cease using defendant's trademark. Similarly in *Palantir,* the defendant stated it would "take legal action to protect its interests" and invited negotiation.

Plaintiffs in this matter were not equivocal with their deadline. Plaintiffs concretely stated they "will" file suit if the offer to settle was not accepted by April 4, 2007. National Tobacco's decision to file on the day of the deadline, and before discussing the matter with Plaintiffs' counsel, shows the specific, concrete, imminence of that deadline. National Tobacco's New York suit is anticipatory forum shopping, therefore an exception to the first-to-file rule.

###    2.    The New York Suit is an Improper Use of the Declaratory Judgment Act.

Moreover, it is improper to invoke the Declaratory Judgment Act to "deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *Z-Line Designs, Inc.,* 218 F.R.D. at 665. Indeed, when a declaratory relief action is triggered by a cease and desist letter, equity militates in favor of allowing the second filed action continue rather that the first. *Id.* at 667. Similarly, the courts have found when a declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed later. *Xoxide, Inc. v. Ford Motor Co.,* 448 F. Supp. 2d 1188, 1193 (N.D.

Cal. 2006).

National Tobacco's New York suit, filed on the day of Plaintiffs' deadline, was wholly triggered by Plaintiffs' cease and desist letter and in anticipation of Plaintiffs' infringement action. The circumstances in this action are entirely analogous to *Z-Line Designs, Inc.* 218 F.R.D. at 663. In *Z-Line,* the anticipatory filing at issue occurred one day before a final deadline given by defendants and was triggered by a cease and desist letter. The court held that equity weighed in favor of the second-filed action, the short time frame between the filings (two days) diminished the importance of the earlier filing date, and, finally, the totality of the circumstances concluded that the declaratory suit was filed because of the infringement suit's imminent threat. Moreover the court found "potential plaintiffs should be encouraged to attempt settlement discussions…prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files a complaint." *Z-Line Designs, Inc.* 218 F.R.D. at 666-667.

National Tobacco's secretive filing of the New York suit while maintaining the pretense of negotiation at the time of the deadline also parallels the circumstances of *Xoxide, Inc.* 448 F.Supp. 2d at 1188. In *Xioxide*, the plaintiffs sent timely responses to the defendant's demands to cease infringing on Ford's trademarks. Plaintiffs responded to defendants letters on or before each deadline and the defendants delayed resorting to judicial resolution during the negotiation. Additionally, the plaintiffs made concessions to defendants agreeing to destroy products with marks confusingly similar to the defendant's. At the same time and unbeknownst to the defendants, the plaintiffs in *Xoxide* filed a declaratory judgment action as "insurance" in California.

Here, as with *Xoxide, Inc.,* National Tobacco made timely contact with Plaintiffs with the

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

pretense of negotiation.  In its letter, National Tobacco also agreed to remove any and all references to Plaintiffs on its Website.  Unbeknownst to Plaintiffs on that same day, National Tobacco filed a declaratory relief action in New York.  As with *Xoxide, Inc.*, "to impose the 'first-to-file' doctrine in this instance…would unreasonably penalize [Plaintiffs], which attempted to resolve the dispute before filing suit."  448 F.Supp. 2d at 1194.

National Tobacco filed its declaratory judgment suit in New York not to settle insubstantial, ephemeral allegations by Plaintiffs, but to choose its own forum.  National Tobacco filed its suit in New York on the day of Plaintiffs' deadline prior to even speaking with Plaintiffs' counsel.  McNamer Dec. ¶5.  Indeed, National Tobacco sent a letter to Plaintiffs' counsel the day of the deadline inviting further discussion and professing its disinterest in litigation.  *See* McNamer Dec. ¶5, Ex. 2.  National Tobacco is improperly invoking the Declaratory Judgment Act to deprive Plaintiffs of their conventional choice of forum and timing, precipitating a disorderly race to the courthouse.  As such, National Tobacco's motion to dismiss or stay the present action must be denied.

**B.    New York Is Not a Proper Venue.**

Venue is proper in an action not based solely on diversity of citizenship in a judicial district in which a <u>substantial</u> part of the actions giving rise to the claim occurred.  28 U.S.C. 1391(b)(2).

National Tobacco's anticipatory New York suit is premised upon a cease and desist letter sent from <u>California</u> to National Tobacco's headquarters in <u>Kentucky</u> regarding advertisements on a Website that is located on the <u>internet</u>.[2]

---

[2] The fact that the Website is accessible in New York is insufficient to support venue under 28 U.S.C. 1391. *See Jamba Juice Company v. Jamba Group, Inc.*, 2002 U.S. Dist. LEXIS 9459, *7-8 (N.D. Cal. 2002). The Website can and is viewed throughout the country.  The injury of National Tobacco's

National Tobacco's spends much of its motion discussing a single show in New York on November 17, 2007.    In putting its entire emphasis on this one show in New York, National Tobacco ignores one significant fact:  National Tobacco began using Plaintiffs' names, likeness and biographies on October 17, 2007 and October 25, 2007 respectively – well before this New York show.

Venue is not proper in National Tobacco's chosen forum. The only real relationship that New York has to this dispute is that is where National Tobacco's counsel has <u>one</u> of its many offices.  No relevant events, let alone a "substantial part of the events," took place in New York, and therefore venue is only proper where the Plaintiffs reside.[3]

**C.    The Forum Selection Clause Does Not Bind Plaintiffs.**

National Tobacco asserts an ostensible agency argument to support its allegation that the Sponsorship Agreement between Galactic Funk Touring, Inc. ("Galactic Funk") and National Tobacco should somehow apply to Plaintiffs.    Under the California Civil Code, ostensible agency is defined as "when a principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."    Cal. Civ. Code 2300.  The burden for showing ostensible agency is on the party asserting the existence of the agency.  *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000).  Ostensible authority may not be based solely on the agent's conduct.  *Id.* Ostensible agency must be proven through explicit representations by the principal, the principal transacting business solely through an agent, a principal's remaining silent with the knowledge

---

violation of Plaintiffs' publicity rights is felt by Plaintiffs where they reside.  Riley Dec. ¶12; David Dec. ¶12; Irving Dec. ¶12.

[3] On May 29, 2008 Plaintiffs filed a Motion to Dismiss for Improper Venue and Forum Non Conveniens in the New York action.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

of an agent's actions on its behalf, a principal's representations to the public, or through customs of the trade. *Id.*

Plaintiffs' made no explicit, negligent or other representations to National Tobacco upon which National Tobacco could have relied. Riley Dec. ¶6; David Dec. ¶6; Irving Dec. ¶6. National Tobacco admits the totality of the "representations" upon which it allegedly relied were those of Galactic Funk's tour manager, Paul Peck, regarding the layout of one single showbill.[4] The emailed representations relied on by National Tobacco and made by Mr. Peck did not even mention Lifesavas or Riley. Mr. Peck simply requested the showbill conform to the "ad material" for Galactic located on Galactic's website. Matt McDonald Dec. ¶3. Moreover, the showbill in question lists Plaintiffs separately and specifically: "featuring Boots Riley (of The Coup)" "with Special Guest Lifesavas." National Tobacco's own exhibit makes clear that Riley is a member of the musical group "The Coup" not Galactic and Lifesavas are listed as a completely separate group. Ballard Dec., Ex. 2. Furthermore, the sponsorship agreement itself makes no mention of any of the Plaintiffs. Plaintiffs only contact with National Tobacco was polite social interaction with people from CMJ (a third party service provider for National Tobacco) the day of the show. David Dec. ¶6; Irving Dec. ¶6; Riley Dec. ¶6.[5]

Thus, Galactic's manager never made any such representations upon which National

---

[4] It is difficult to imagine how Mr. Peck's opinions as to the size of the various fonts on a flyer for a single performance somehow indicated to National Tobacco that Mr. Peck represented Plaintiffs and could act on behalf of Plaintiffs and grant a license in Plaintiffs' publicity rights to National Tobacco. The fact that a simple online search, or a question to Plaintiffs, would make clear that Plaintiffs are represented by Erlick, and Peck had absolutely no authority to bind Plaintiffs to any agreement.

[5] National Tobacco points to Galactic's website as evidence that Lifesavas and Boots Riley were members of Galactic. However, National Tobacco's own Exhibit from the Galactic's website lists Boots Riley as a "special guest" and attributes him to "The Coup" not Galactic. *See* Ballard Dec. Ex. 2. Lifesavas are not mentioned in this Exhibit. Indeed, National Tobacco's own biography of Galactic listed the five members of Galactic. McNamer Dec. ¶7, Ex. 5. Those members do not include Riley, David or

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

Tobacco relied.   Peck Dec. ¶8.   But even if he had, Plaintiffs made no explicit representations to

National Tobacco that Galactic's manager represented Plaintiffs' interests.   Plaintiffs do not

transact business solely through Galactic or its manager.   Plaintiffs had no knowledge of any

Sponsorship Agreement or of any representations by Galactic to National Tobacco. David Dec.

¶6; Irving Dec. ¶6; Riley Dec. ¶6.   Plaintiffs made no representations to the public that Galactic

served as their agent.   *Id.*   Indeed, no one has ever made any representations that Galactic or

Peck was serving as Plaintiffs' agent. Peck Dec. ¶¶ 5-6, 8 Riley Dec ¶ 6; Irving. Dec. ¶ 6; David

Dec. ¶ 6.

Importantly, the very first time Zig-Zag Live representatives met Plaintiffs was at the

November 6, 2007 and November 17, 2007 shows.   *See* Winifred Chane Dec. ¶2; McDonald

Dec. ¶5.   Those initial meeting occurred several weeks <u>after</u> National Tobacco began using

Plaintiffs names, image and biographies to promote its products (October 17, 2007 for Riley and

October 25, 2007 for Lifesavas), and between four and six weeks <u>after</u> the Sponsorship

Agreement was signed (October 9, 2007).   Thus, it is <u>impossible</u> for National Tobacco to have

relied on Plaintiffs' representations or action to support its purported belief that Mr. Peck was

acting as their agent.

Finally, National Tobacco's argument is completely counter to the customs of the music

trade.   As stated by Mr. Peck in his Declaration, anyone with even basic familiarity with the

music industry would necessarily understand that the mere fact that a band is sharing a bill

doesn't mean the bands somehow merge. Peck Dec ¶3; *see also* Erlick Dec. ¶5.  Obviously if the

Rolling Stones are on tour and Van Morrison opens the show, Van Morrison does not become a

---

Irving.  Interestingly,  and contrary to its own argument, National Tobacco itself listed Lifesavas and
Boots Riley separately as independent "ZigZag Artists" on its Website.  *Id.* at Exs. 6-7.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

member of the Rolling Stones, and the Rolling Stones' manager doesn't somehow become Van

Morrison's manager and agent.   Peck Dec. ¶3.   Moreover, Peck unequivocally confirms in his

declaration that he never purported to represent Plaintiffs or bind them to any agreement.   *Id.* at

¶¶5-6, 8.

National Tobacco's assertion that the Sponsorship Agreement's forum selection clause

should bind Plaintiffs due to Galactic Funk's ostensible agency of Plaintiffs fails under every

test.   National Tobacco has not met its burden; the forum selection clause in the Sponsorship

Agreement does not bind Plaintiffs.[6]

## D.     Transfer Per 28 U.S.C. 1404(a) is Inconvenient for Plaintiffs and Unwarranted.

A moveant bears the burden of justifying a transfer by a strong showing of convenience.

*Sony Computer Entertainment America Inc. v. America Medical Response, Inc.,* 2007 U.S. Dist.

LEXIS 76830 at *17-18.   A motion to transfer may be denied "if the increased convenience to

one party is offset by the added inconvenience to the other party."   *Id.*   The plaintiffs' choice of

forum is given significant weight and will not be disturbed unless other factors weigh

substantially in favor of transfer.   *Id.*   This is particularly true if the choice of forum is the

---

[6] Further, extending a forum selection clause to a non-party requires unusual and specific circumstances which are not reflected in the present suit.   The moving party must show (1) the non-contracting party agreed to be bound by the terms of an agreement containing the clause; (2) the contracting parties' intention to benefit an unsigned party; and (3) an entwining business relationship.   *Berclain America Latina v. Baan Co.* N.V., 74 Cal. App. 4th 401, 407 (1999).   None of these prongs are met: (1) Plaintiffs were not even aware of the Sponsorship Agreement, (2) Peck had no intention to obligate Plaintiffs, (3) Plaintiffs and Galactic have nothing approaching and entwining business relationship.   They are all separate musical artists, who occasionally play shows together.   Examples of the relationship necessary to bind a non-contracting party to a forum selection clause include: a non-contracting party who acted in concert with a contracting party in order to defraud; an assignee to the copyrights at issue where the assignor was the contracting party; and, a successor-in-interest to a contracting party.   *Tolentino v. Mossman,* 2007 U.S. Dist. LEXIS 95717 (E.D. Cal. 2007); *Graham Technology Solutions, Inc. v. Thinking Pictures,* Inc., 949 F. Supp. 1427, 1434 (N.D. Cal. 1997); *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509.   No similar circumstances are present in this case.

Case No. C-08-01931 JSW
Page 14 –OPPOSITION TO MOTION TO DISMISS, TRANSFER OR STAY

plaintiffs' domicile. *Id.*

Two of the plaintiffs reside in Oakland, California, one resides in Portland, Oregon. National Tobacco is a large company headquartered in Kentucky with offices in many states, including California. No party to this action resides or is headquartered in New York. Plaintiffs' contacts with New York are brief and sporadic (they play shows there every so often), and have nothing to do with Plaintiffs' claims. Riley Dec. ¶13; David Dec. ¶13; Irving Dec. ¶13. It is inconvenient for these individual, working-class musicians to travel across the country defend a suit in New York. Riley Dec. ¶14; David Dec. ¶14; Irving Dec. ¶14. Additionally, National Tobacco's counsel has offices in San Francisco, whereas Plaintiffs have been forced to hire separate New York counsel to defend the anticipatory New York suit.

## V.    CONCLUSION

For the foregoing reasons, National Tobacco's Motion must be denied in its entirety and this matter allowed to continue as presently filed in the U.S. District Court, Northern District of California.

Dated: May 30, 2008                          MCNAMER AND COMPANY PC


                                             /Anthony E. McNamer/
                                             _____
                                             Anthony E. McNamer
                                             Of Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the following:

1.    **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER;**

2.    **DECLARATION OF RAYMOND RILEY IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

3.    **DECLARATION OF SOLOMON DAVID IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

4.    **DECLARATION OF MARLON IRVING IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

5.    **DECLARATION OF KENNETH ERLICK IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

6.    **DECLARATION OF PAUL PECK IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER;**

7.    **DECLARATION OF ANTHONY MCNAMER IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER; and**

8.    **PROPOSED ORDER DENYING DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**

have been served the counsel of record for Defendant via the Court's electronic filing system on

May 30, 2008.

<u>/s/ Deborah Gumm</u>
Anthony E. McNamer
Deborah Gumm
**McNamer and Company, PC**
519 S.W. Third Avenue
Suite 601
Portland, OR 97204
(503) 727-2504
Fax: (503) 727-2501

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE
Case No. C-08-01931 JSW
Page 1 –OPPOSITION TO MOTION TO DISMISS, TRANSFER OR STAY
MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon 97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>**PLAINTIFFS**,<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT**. | **Case No. C-08-01931 JSW**<br><br>**SOLOMON DAVID'S DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Solomon David, declare as follows:

1.     I am a resident of Oakland, California.

2.     I am a musician and co-founder of the hiphop group Lifesavas with

Marlon Irving.  Lifesavas is managed by Kenneth Erlick and has been for more than five

years.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

3.      Lifesavas are part of the positive hiphop movement.  As Lifesavas, we have built our career addressing such issues as politics, family, social justice, drug abuse, religion and racial progress.  Our music is conscientious and our image is about motivating kids and adults to stay drug and alcohol free.  Our music encourages our fans to be aware of the problems associated with such abuses.

4.      I am friends with the band Galactic.  On occasion, Lifesavas have been an opening artist for Galactic.  At a November 17, 2007 show at the Roseland Theater, Lifesavas opened for Galactic.

5.      I am not a member of the band Galactic or a shareholder in Galactic Funk Touring, Inc., and I have never been managed by Paul Peck.   I have never claimed to be part of Galactic, or Galactic Funk Touring, Inc. and I have never told anyone that Paul Peck was my manager, or had any authority over me whatsoever.

6.      It is now my understanding Galactic is a sponsored Zig-Zag Artist for National Tobacco Company, LP.  At one performance I may have briefly socialized with the representatives of CMJ – who were apparently working for National Tobacco Company.  Other than during that event, I have had no contact with National Tobacco.  I was unaware that Galactic had signed a sponsorship agreement with National Tobacco and never saw a copy of that agreement until National Tobacco's amended complaint was filed in the New York.

7.      It was recently discovered that, since October 25, 2007, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig-Zag branded products.  National Tobacco featured us on their website as "Zig-Zag Artists."   National Tobacco had no license or

Case No. C-08-01931 JSW
Page 2 – SOLOMON DAVID DECLARATION

authority to use our names, likeness and biography and therefore violated our right of publicity.

8.      I was surprised and alarmed by National Tobacco identifying Lifesavas with its products.  Given tobacco company's known exploitation of the African American community and other obvious reasons, I would never license Lifesavas' or my name, photograph or biography to promote tobacco products.

9.      On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate for their unlawful use of our names, likeness and biography to promote their products.

10.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 21, 2008.

11.      On April 11, 2008 a substantive lawsuit was filed by me, Solomon David and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – seven days prior to my service in this matter.

12.      National Tobacco's use of Lifesavas' and my name, photograph and biography on its website injures my professional reputation and my ability to perform in California, the Pacific Northwest and throughout the United States.

13.      Other than the occasional performance in New York, I have no

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

contacts with New York.  I do not reside there.  All of the plaintiffs in this action reside in either Oakland, California or Portland, Oregon.  I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.  We are all individuals, trying to make a living as musical artists.  It would be incredibly expensive and inconvenient to force all three if us to prosecute an action in New York.  This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 29, 2008 in Oakland, California

Solomon David

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT**. | **Case No. C-08-01931 JSW**<br><br>**KENNETH ERLICK'S DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Kenneth Erlick, declare as follows:

1.     I am a resident of Portland, Oregon.

2.     I am the manager of the hiphop group Lifesavas consisting of the

musicians and performers Solomon David and Marlon Irving.  I also manage Raymond

Riley, who performs as Boots Riley and is a founding member of The Coup.

Case No. C-08-01931 JSW
Page 1 – KENNETH ERLICK DECLARATION

3.    I have never had any interaction with National Tobacco Company LP, Zig-Zag or Zig Zag Live.   I have never authorized Galactic or their manager Paul Peck to act on behalf of Lifesavas or Boots Riley.   Knowing my clients' background and socio-political stances, I would never even suggest that they enter into a sponsorship agreement to promote tobacco products.  Until this dispute I have never seen Galactic's Sponsorship Agreement with Zig Zag Live or knew that such an agreement even existed.

4.    I knew that Boots Riley and Lifesavas were playing some shows with Galactic (along with many other artists) and assumed that there would be fliers listing my guys on the bill.    Boots Riley and Lifesavas have guested on numerous shows with Galactic over the last two years.

5.    Anyone with an even basic familiarity of the music industry would necessarily understand that the mere fact that a band is sharing a bill doesn't mean the bands somehow merge into each other.  Similarly, guest performers who occasionally perform with a band do not by that action become a member of that band.  As the term indicates, they are guests to that performance.  Lifesavas and Boot Riley have never been a part of Galactic.   In fact, the bill that National Tobacco has attached as an exhibit makes clear that Boot Riley is a member of The Coup – not Galactic.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Portland, Oregon

_____
Kenneth Erlick

Case No. C-08-01931 JSW
Page 2 – KENNETH ERLICK DECLARATION

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>                     **PLAINTIFFS**,<br><br>      v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>                     **DEFENDANT**. | **Case No. C-08-01931 JSW**<br><br>**MARLON IRVING'S DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Marlon Irving, declare as follows:

1.      I am a resident of Portland, Oregon.

2.      I am a musician and co-founder of the hip-hop group Lifesavas with

Solomon David.  Lifesavas is managed by Kenneth Erlick and has been for more than

five years.

3.      Lifesavas are part of the positive hiphop movement.  As Lifesavas, we have built our career addressing such issues as politics, family, social justice, drug abuse, religion and racial progress.  Our music is conscientious and our image is about motivating kids and adults to stay drug and alcohol free.  Our music encourages our fans to be aware of the problems associated with such abuses.

4.      I am friends with the band Galactic.  On occasion, Lifesavas have been an opening artist for Galactic.  At a November 17, 2007 show at the Roseland Theater, Lifesavas opened for Galactic.

5.      I am not a member of the band Galactic or a shareholder in Galactic Funk Touring, Inc., and I have never been managed by Paul Peck.   I have never claimed to be part of Galactic, or Galactic Funk Touring, Inc. and I have never told anyone that Paul Peck was my manager, or had any authority over me whatsoever.

6.      It is now my understanding Galactic is a sponsored Zig-Zag Artist for National Tobacco Company, LP.  At one performance I may have briefly socialized with the representatives of CMJ – who were apparently working for National Tobacco Company.  Other than during that event, I have had no contact with National Tobacco.  I was unaware that Galactic had signed a sponsorship agreement with National Tobacco and never saw a copy of that agreement until National Tobacco's amended complaint was filed in the New York.

7.      It was recently discovered that, since October 25, 2007, National Tobacco Company LP ("National Tobacco") has been using Lifesavas' name, likeness and biography to promote its products, specifically its Zig Zag branded products.  National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

license or authority to use our names, likeness and biography and therefore violated our right of publicity.

8.     I was surprised and alarmed by National Tobacco identifying Lifesavas with its products.   Given tobacco companies' known exploitation of the African American community and obvious other reasons, I would never license Lifesavas' or my name, photograph or biography to promote tobacco products.

9.     On March 28, 2008 Raymond Riley and Lifesavas sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate for its unlawful use of our names, likeness and biography to promote its products.

10.     National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 24, 2008.

11.     On April 11, 2008 a substantive lawsuit was filed by me, Solomon David and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – seven days prior to my service in this matter.

12.     National Tobacco's use of Lifesavas' and my name, photograph and biography on its website injures my professional reputation and my ability to perform in California, the Pacific Northwest and throughout the United States.

13.     Other than the occasional performance in New York, I have no contacts

with New York.  I do not reside there.  All of the plaintiffs in this action reside in either

Oakland, California or Portland, Oregon.  I assume that we would be the primary

witnesses in this case, along with our managers, who also reside in California and

Oregon.  We are all individuals, trying to make a living as musical artists.  It would be

incredibly expensive and inconvenient to force all three if us to prosecute an action in

New York.  This is particularly true since National Tobacco is headquartered in

Louisville, Kentucky, and the only nexus New York has to this action is that National

Tobacco's attorneys have an office there.

I hereby declare that the above statement is true to the best of my knowledge and belief

and that I understand that is made for use as evidence in court and is subject to penalty

for perjury.


EXECUTED on May 29, 2008 in Portland, Oregon

_____
Marlon Irving

MCNAMER AND COMPANY PC

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

       Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>        **PLAINTIFFS,**<br><br>  v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>       **DEFENDANT.** | Case No. C-08-01931 JSW<br><br>**ANTHONY MCNAMER'S DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Anthony McNamer, declare as follows:

      1.     I represent the Plaintiffs in the above entitled matter.

      2.     I make this declaration in support of Plaintiffs' Opposition to Defendant's

Motion to Dismiss, Stay or Transfer.

      3.     I was contacted by Raymond Riley, Solomon David and Marlon Irving's

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

(collectively "Plaintiffs") in relation to National Tobacco's violation of their rights of publicity.

4.      On March 28, 2008, I sent a letter from California to National Tobacco's headquarters in Kentucky. The letter outlined Raymond Riley, Solomon David and Marlon Irving's position regarding National Tobacco's violation, demanded National Tobacco cease all use of my clients' names, likeness and biographies, and further demanded payment for the prior unauthorized use. I gave National Tobacco until April 4, 2008 to comply with the demand or I would files suit on my clients' behalf. A copy of that letter is attached hereto as Exhibit 1.

5.      On the morning of April 4, 2008 I received a letter from National Tobacco along with an email stating that she would like to discuss our demand. The email attaching that letter is attached hereto as Exhibit 2. We set up a time and had a telephone conference around 2:30 pm PDT (5:30 pm EDT). Ms. Ballard asked me to send her the case that I believe supported my damages theory, so that she could consider it. I sent her the case right after I got off the phone. A copy of the 2:41 pm PDT (5:41 pm EDT) email is attached as Exhibit 3. Unbeknownst to me, and direct contraction of Ms. Ballard purported interest in discussing settlement, Ms Ballard had already filed a declaratory relief case in the Southern District of New York. Ms. Ballard sent me the Complaint attached to an email at 9:36 am on April 7, 2008 (April 4th was a Friday). Attached as Exhibit 4 is a copy of the email attaching the New York complaint.

6.      I filed the complaint in the present action on April 11, 2008.

7.      A true and exact copy of the ZigZagLive.com Artist listing for Galactic is attached hereto as Exhibit 5. A true and exact copy of the ZigZagLive.com Artist listing

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

for Raymond Riley, p.k.a. Boots Riley is attached hereto as Exhibit 6.  A true and exact copy of the ZigZagLive.com Artist listing for Solomon David and Marlon Irving, p.k.a. Lifesavas, is attached hereto as Exhibit 7.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 29, 2008 in Portland, Oregon.

_____  Anthony McNamer

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

Exhibit 1



# McNamer and Company

Intellectual Property • Entertainment • Sports • Litigation • Corporate

*Portland*
*Los Angeles*

Anthony McNamer
503.727.2504
anthony@mcnamerlaw.com

March 28, 2008

CONFIDENTIAL SETTLEMENT COMMUNICATION

VIA FACSIMILE (502-774-9235)

National Tobacco Company, LP
General Counsel
3029 W Muhammad Ali Blvd.
Louisville, KY 40212-2238

Re: Lanham Act and Right of Publicity Violations

This firm represents the musical group consisting of Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and the musical group consisting of Solomon David and Marlon Irving p.k.a. Lifesavas. It has come to our attention that since June 12, 2006, October 17, 2007 and October 25, 2007 respectively, you have been using my clients' names, likeness and biographies to promote Zig-Zag brand products on the ZigZagLive.com website (the "Website"). Your unlicensed and illegal use of my clients' names, likeness, and biographies constitutes violations 15 U.S.C. § 1125(a)(1)(A) and various state right of publicity laws, including California Civil Code §3344 and the common law of Oregon. My clients are particularly damaged by this use because they would never license use of their names, likeness and biographies to promote tobacco products. My clients' music does not promote smoking and they are appalled that their fans now perceive them to be profiting from the sale of tobacco products. Your persistent illegal acts have made it appear to these fans that they have "sold out" to a tobacco company. In addition to all parties' unwillingness to promote tobacco products, Boots Riley's music presents a decidedly anti-corporate message. Obviously, his apparent sponsorship by a tobacco company flies directly in the face of the message he has spread throughout his career.

Thus, while under normal circumstances my clients' actual damages would likely be a reasonable licensing fee, under the present circumstances there is no licensing fee that my clients would find reasonable. However, since monetary damages (and your immediate removal of my clients' names, likeness and biographies) are what we must work with, we have investigated what a standard licensing fee would be.

We are informed that if your company had sponsored my clients' live performances (which is what your company is doing in relation to many of the sponsored acts), you would pay between $3000 and $5000 per show. During the period of your illegal use, Blackalicious performed 57 shows, Boots Riley performed 50 shows and Lifesavas performed 27 shows. Thus, ignoring the fact that a license fee would be impossible to negotiate, you would have paid Blackalicious between $171,000 and $285,000, Boots

Confidential
Page 2

Riley between $150,000 and $250,000 and Lifesavas between $81,000 and $135,000.  Also, with the sizable amount of cross marketing you've done (*e.g*. through sonicbids.com and CMJ) in relation to this campaign, it would not surprise me if the Website has been viewed several millions of times – thus resulting in far greater publicity than show sponsorships would ever garner.

Though my clients are entitled $285,000, $250,000 and $135,000 respectfully, and additionally are entitled to exemplary damages and their attorneys fees and costs, Blackalicious will settle their claims for $171,000, Boots Riley will settle his claims for the payment of $150,000 and Lifesavas will settle their claims for $81,000.  Further, you must immediately cease all use of their names, likeness and biographies, including all such use on the Website.

Our offer will remain open until April 4, 2008.  If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likeness and biographies by a tobacco company so as to mitigate any further damage to their reputation.  My clients will also file suit in California and Oregon (I am licensed in both states).   It obviously would be best for all parties to quickly and confidentially settle this matter.  I sincerely hope that is possible under the terms set forth above.

I look forward to your prompt response.


Very truly yours,

McNamer and Company



Anthony McNamer

519 SW Third Avenue, Suite 601 • Portland, Oregon 97204 • main: 503.727.2500 • fax: 503.727.2501 • www.mcnamerlaw.com

Exhibit 2

**From:**          Ballard, Marcella [Marcella.Ballard@BAKERNET.com]
**Sent:**           Friday, April 04, 2008 7:51 AM
**To:**             anthony@mcnamerlaw.com
**Cc:**             Ballard, Marcella
**Subject:**        FW: Emailing: DOC975.PDF
**Attachments:**    DOC975.PDF

<<DOC975.PDF>>

Please see the attached letter, I will call you to discuss later today.
Marci

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a
Swiss Verein.


Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.  Click here or visit www.bakernet.com/disclaimer_bm  for other important information concerning this message.

Exhibit 2; Page 1 of 1

Exhibit 3

**Subject:**                    Emailing: DOC975.PDF


-----Original Message-----
**From:** Anthony McNamer [mailto:anthony@mcnamerlaw.com]
**Sent:** Monday, May 26, 2008 1:58 PM
**To:** Deborah Gumm
**Subject:** Fwd: Emailing: DOC975.PDF


**Anthony E. McNamer, Esq.**
**McNamer and Company**
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*

Begin forwarded message:


**From:** Anthony McNamer <anthony@mcnamerlaw.com>
**Date:** April 4, 2008 2:42:55 PM PDT
**To:** "Ballard, Marcella" <Marcella.Ballard@BAKERNET.com>
**Cc:** Anthony McNamer <anthony@mcnamerlaw.com>
**Subject: Re: Emailing: DOC975.PDF**

Here is the case I was referring to.
Waits v. Frito-Lay, Inc., 978 F.2d 1093 (9th Cir. 1992), cert. denied, 506 U.S. 1080 (1993).

In Waits, the Ninth Circuit affirmed a $2.5 million verdict against Frito-Lay and its advertising agency on a voice imitation claim.

Singer Tom Waits sued Frito-Lay claiming false endorsement under the Lanham Act and misappropriation of his voice in a Frito-Lay radio commercial. After trial before Judge James Ideman in the United States District Court (Central District of California), the jury returned a $2.5 million verdict in Waits' favor comprised of $375,000 in compensatory damages, $2 million in punitive damages, and the remainder in attorneys' fees.

The Ninth Circuit affirmed, citing its holding in Midler v. Ford Motor Co., 849 F.2d 460, 463 (9th Cir. 1988): "when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort in California."

The court also affirmed the $2 million punitive damages award finding that defendants consciously disregarded Waits' right to control his identity. Waits, 978 F.2d at 1105. In affirming the compensatory damage award, the court referred to clear evidence of Waits' outspoken public stance against doing commercial endorsements, his embarrassment when the commercial aired, and the injury to his good will and future publicity value. Id. at 1103-1104

Anthony E. McNamer, Esq.

McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*


On Apr 4, 2008, at 11:28 AM, Ballard, Marcella wrote:

Okay.  I am in all afternoon.  I am stepping out now for about an hour
though.  marci

-----Original Message-----
From: Anthony McNamer [mailto:anthony@mcnamerlaw.com]
Sent: Friday, April 04, 2008 2:27 PM
To: Ballard, Marcella
Subject: Re: Emailing: DOC975.PDF

I'm actually in SF working on a case, but I can give you a call
sometime in the next couple hours when I get a break.

Anthony E. McNamer, Esq.

McNamer and Company

519 SW Third Ave, Suite 601

Portland, Oregon 97204

ph: 503.727.2504  fax: 503.727.2501

<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>

*Please Note Name and Email Change*


On Apr 4, 2008, at 11:24 AM, Ballard, Marcella wrote:

Anthony: are you in your office?  Why don't you call me, or I will

call
you.


-----Original Message-----
From: Anthony McNamer [mailto:anthony@mcnamerlaw.com]
Sent: Friday, April 04, 2008 2:24 PM
To: Ballard, Marcella
Cc: Kenneth Erlick; John Boyle
Subject: Re: Emailing: DOC975.PDF


Also, as an aside, Boots Riley did not accept a guitar from Zig Zag.
Galactic's guitarist received a guitar.  You should better research
the facts before you attempt to make a snide jab.



Anthony E. McNamer, Esq.
McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*




On Apr 4, 2008, at 7:50 AM, Ballard, Marcella wrote:

        <<DOC975.PDF>>

        Please see the attached letter, I will call you to discuss later
        today.
        Marci

        Marcella Ballard
        Counsel, Intellectual Property Group

BAKER & McKENZIE LLP

1114 Avenue of the Americas

New York, NY 10036

Tel: +1 212 626 4664

Fax: +1 212 310 1643

marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a

Swiss Verein.

Pursuant to requirements related to practice before the Internal

Revenue Service, any tax advice contained in this communication

(including any attachments) is not intended to be used, and cannot

be used, for the purposes of (i) avoiding penalties imposed under

the United States Internal Revenue Code or (ii) promoting, marketing

or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If

it has been sent to you in error, please reply to advise the sender

of the error and then immediately delete this message.  Click here

or visit www.bakernet.com/disclaimer_bm  for other important

information concerning this message.

<DOC975.PDF>

Exhibit 4

| **From:** | Ballard, Marcella [Marcella.Ballard@BAKERNET.com] |
| **Sent:** | Monday, April 07, 2008 9:36 AM |
| **To:** | anthony@mcnamerlaw.com |
| **Cc:** | Ballard, Marcella; Lakes, Joi |
| **Subject:** | Attached Complaint |
| **Attachments:** | Waiver of Service.pdf; Complaint_08CV03383.pdf; Judge Scheindlin Rules.pdf |

Mr. McNamer:

Attached is a complaint filed April 4, 2008.  Please reply by return email whether you will accept service on behalf of the named defendants.  Also attached is USDC SDNY waiver of service form.  Be advised that if you do not accept service and end up representing the named defendants, your clients will be liable for the costs of service for the summons and complaint.  I have also enclosed Judge Scheindlin's rules and procedures.

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Click here or visit www.bakernet.com/disclaimer_bm for other important information concerning this message.

Exhibit 5

CMJ's Music Marathon.

http://www.fourfiftyoneband.com/

# Galactic

October 9th, 2007             back to t

Galactic began as an octet named Galactic Prophylactic, but was trimmed down
an instrumental sextet, later adding soulman Theryl DeClouet on vocals. The ba
was originally formed when, upon relocating from Washington D.C. to New
Orleans, guitarist Jeff Raines and bassist Robert Mercurio became instantly
enamored with the local jazz and funk scene that produced the likes of the Mete
Dr. John, and Professor Longhair. The band has largely built their reputation
through their incendiary live performances on a relentless touring schedule, but



doesn't hurt that they can
also arrange songs with the
acumen of seasoned veterans.
Galactic never plays for the
sake of showing off; rather,
they play as a true ensemble,
allowing the groove in each
song to truly sink in before
heading for an instrumental
freak-out. This is plainly
illustrated in the band's early
recordings on *Coolin' Off* and
*Crazyhorse Mongoose*, or in the futuristic sounds of *Ruckus*, arguably the band's
pinnacle achievement. By this time drummer Stanton Moore had been
experimenting with drum and keyboard loops and other digital sounds, which
make up the rhythmic backbone of the album. This year, Galactic return with
another adventurous outing, *From the Corner to the Block*. This marks their firs
album without DeClouet on vocals, and instead features guest appearances from
premier hip-hop artists such as Lyrics Born, Digable Planets' Ladybug Mecca,
and Jurassic 5's Chali 2na. Catch them and many of these guests as they perform
at the Zig-Zag Live Fall Tour this November.

www.galacticfunk.com/

*Story by Andrew Lutwin*

Exhibit 6

back to top



## Boots Riley

October 17th, 2007

Boots Riley is a co-founding member, producer, songwriter, and arranger of the revolutionary hip-hop group the Coup, but Riley's penchant for activism and rebellious tactics go back to his teenage years. After organizing activist groups in his high school, Riley served on the central committee for the Progressive Labor Party, held the presidential seat on the International Committee Against Racism, and helped to organize the Anti-Racist Farm Workers' Union in California. In 1991, along with a group of fellow artists and political activists, Riley formed the Mau Mau Rhythm Collective, which held local hip-hop concerts to help promote awareness for the causes of civil liberties organizations such as the Women's Economic Agenda Project and various other anti-police brutality campaigns. As a result of these performances, the Coup was formed later that year, releasing their first album *Kill My Landlord* in 1993. *Genocide and Juice* followed in 1994, after which their label folded, and Riley went into retirement from music. He returned music with the Coup in 1998, releasing *Steal This Album* that year and *Party Music* in 2001, which was rated "best rap album of the year" by several publications including *Rolling Stone*. *Pick a Bigger Weapon* came in 2006, freshly combining the outrage of Public Enemy with the grooves of the live musicianship found on classic Prince or Parliament/Funkadelic records. Having made a guest appearance on

Exhibit 7



## Lifesavas

October 27th, 2007

Portland, Oregon hip-hop duo Lifesavas met during a pick-up basketball game and quickly became aware of each other's rapping skills. MC Vursatyl and Producer/MC Jumbo the Garbageman recorded the single "Grand Larceny" under the title of Lifesavas and were subsequently picked up by label Quannum. They released their second single "Headexercise" for Quannum and did some extensive touring with labelmates Blackalicious. In 2003, Lifesavas released their debut album *Spirit in Stone*, which gave the hip-hop community a glimpse of their unique politically and spiritually conscious lyricism. The duo took a huge creative leap forward for their next release *Gutterfly*. Lifesavas created the idea of a never completed blaxploitation film of the same name, and told the un-made movie's story through its main characters Bumpy Johnson and Sleepy Floyd. The album describes the land of Razorblade City through positive vibes that recall early De La Soul, as well as grittier tracks that underline the racial profiling and violence of the fictional city. Look for these hip-hop visionaries on this November's Zig-Zag Live Tour with Galactic.

www.myspace.com/lifesavas

**ANTHONY E. MCNAMER CSB #178911**
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>**PLAINTIFFS**,<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT**. | Case No. C-08-01931 JSW<br><br>**DECLARATION OF PAUL PECK IN OPPOSITION TO MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Paul Peck, declare as follows:

1.      I am the manager for the musical group professionally known as Galactic.   I have

been Galactic's manager for several years and was their manager during 2007.  Galactic Funk

Touring, Inc. is Galactic's corporate form.

2.      As indicated in the band's biography posted on the band's official website

www.galacticfunk.com, the band is a five-man group consisting of drummer Stanton Moore, bassist Robert Mercurio, saxophonist/harmonica player Ben Ellman, keyboardist Richard Vogel, and guitarist Jeff Raine.  A true and correct copy of Galactic's bio is attached hereto as Exhibit 1.

3.     Like every band, when Galactic plays shows they typically have one or two acts whom with they play.   Obviously, the other musical artists who happen to share a bill with Galactic are not members of Galactic and are not managed by me.  Anyone with even basic familiarity with the music industry would necessarily understand that the mere fact that a band is sharing a bill doesn't mean the bands somehow merge into each other.   Thus, if the Rolling Stones are on tour and Van Morrison opens up, Van Morrison does not become a member of the Rolling Stones, and the Rolling Stones' manager doesn't somehow become Van Morrison's manager.

4.     Also, because Galactic is an instrumental group, during its live shows and on its albums, they feature sometimes have guest performers.  Again, this is a common occurrence in the music industry.   Those guest performers are not members of Galactic and they are not managed by me.   Anyone with even basic familiarity with the music industry would necessarily understand that guest performers are not part of the band.   As the term indicates – they are guests.   Similar to the example above, if Van Morrison came on stage and sang a song with the Rolling Stones, that clearly wouldn't make Van Morrison a member of the Rolling Stones, or somehow make Van Morrison managed by the Rolling Stones' manager.

5.     Raymond Riley was never a member of Galactic or a shareholder in Galactic Funk Touring, Inc. and I have never managed Raymond Riley.    At all relevant times Raymond Riley was either a member of the musical group "The Coup" or a solo performer.   I have never indicted to anyone, including anyone at CMJ Network or Zig Zag Live, that I managed Raymond

Page 2 – DECLARATION OF PAUL PECK IN OPPOSITION TO MOTION TO DISMISS

Riley or had any authority to enter into contracts on his behalf.   And I have never purported to enter into any contracts on his behalf.  All readily accessible public information makes clear that Raymond Riley is managed by Kenneth Erlick.

6.    Solomon David and Marlon Irving perform as the musical group "Lifesavas." Neither have ever been a member of Galactic or a shareholder in Galactic Funk Touring, Inc. and I have never managed them individually or as a group.   I have never indicted to anyone, including anyone at CMJ Network or Zig Zag Live, that I managed them individually or as a group or had any authority to enter into contracts on their behalf. And I have never purported to enter into any contracts on their behalf.  All readily accessible public information makes clear that Lifesavas are managed by Kenneth Erlick.

7.    On October 9, 2007 I entered into an Artist Sponsorship Agreement ("Agreement") on behalf of Galactic Funk Touring, Inc.   That Agreement had nothing to do with Raymond Riley or the Lifesavas.   I would never purport to enter into an agreement on behalf of artists that I do not represent.  At times during our touring, Lifesavas appeared as an opening act and Raymond Riley was a guest artist (usually one of many).   Since Galactic was the headlining act for that show, I took care of the show bill.  As that show bill (which is attached to Ms. Ballard's declaration as Exhibit 3) makes clear, Boots Riley was a featured vocalist from The Coup – not Galactic.   Lifesavas were merely an opening act.   No person with any familiarity with the music industry or live shows could reasonably believe that Raymond Riley (or the other two guest vocalists) were somehow "members" of Galactic, or that the opening act was somehow merged into Galactic.  No person could reasonably believe that I was somehow managing these other independent artist, just because they were all on the same bill.

8.    Again I would never tell anyone that I represented Raymond Riley or the Lifesavas,

Page 3 – DECLARATION OF PAUL PECK IN OPPOSITION TO MOTION TO DISMISS

and I would never purport to enter into sponsorship agreements on behalf of these artists. The only person with such authority is their own manager (or the artists themselves), and anyone with a computer (or who asked me) would know that I have never represented these artists.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct and that this declaration was executed on May 29, 2008 at

New York , New York .

Paul Peck

Page 4 – DECLARATION OF PAUL PECK IN OPPOSITION TO MOTION TO DISMISS

Exhibit 1

GALACTICFUNK.COM : BIOGRAPHY



**NEWS · GIGS · BAND INFO · MEDIA · MESSAGE BOARD · STORE · LIVE DOWNLOADS · MAILING LIST · LINKS · CONTACT**

BAND INFO : BIOGRAPHY : PRESS : SET LISTS

With the release of their sixth album, *From the Corner to the Block*, the five-man group GALACTIC - drummer Stanton Moore, bassist Robert Mercurio, saxophonist/harmonica player Ben Ellman, keyboardist Richard Vogel, and guitarist Jeff Raines - reaffirms their standing as one of the funkiest outfits in the known universe. Featuring a cherry-picked guest list of some of hip-hop's most dynamic lyricists - including Juvenile, Gift of Gab (Blackalicious), Lyrics Born, Ladybug Mecca (Digable Planets), Mr. Lif, Chali 2na (Jurassic 5), Vursatyl (Lifesavas), and Boots Riley (The Coup), *From the Corner to the Block* exposes GALACTIC's organic grooves to an urban ear while still maintaining their essential funk aesthetic.

The band started out over a decade ago as an instrumental act in the tradition of the Meters, the JB's, and Booker T. & the MG's - bands equally comfortable recording their own material or working with vocalists. *From the Corner to the Block* grew out of GALACTIC's experiences touring with artists like the Roots, Jurassic 5, Triple Threat DJs and Gift of Gab. Though it features cameos from a "wish list" of fan-favorite MCs, this isn't a typical hip-hop album per se, but a contemporary funk record that just happens to feature hip-hop vocalists. "We never set out to make a rap record," explains Ellman, who produced the record with assistance from engineer extraordinaire Count (Halou, Quannum, DJ Shadow). "We wanted to kinda modernize the New Orleans sound," adds Mercurio.

The New Orleans legacy echoes throughout the album, indeed. The brassy "Bounce Baby" (featuring DJ Z-Trip) stirs up wah-wah guitar, a horn-driven melody, syncopated beats, and turntable wizardry into a potent rhythmic instrumental. "Tuff Love" (featuring Trombone Shorty) offers a taste of some of New Orleans' hottest young talent. "Second and Dryades," (featuring Big Chief Monk Boudreau), evokes the spirit of the Wild Magnolias - it's a percussion-laced Mardi Gras anthem for the digi generation, on which Boudreau relates the story of being an Indian on Mardi Gras day. The song is sure to raise eyebrows though is the title track and first single, featuring the Soul Rebels Brass Band and platinum rapper Juvenile (who tapped GALACTIC to back him on the "Jimmy Kimmel Show"), Mercurio, for one, is happy with the outcome. "It sounds like it was all supposed to be there, this track was meant to happen" he says.



The rest of the album features a diverse array of funky arrangements, vocal deliveries, and musical expressions, from sexy downtempo jams like "Squarebiz," featuring the ever-delectable Ladybug Mecca and singer Nino Moschella; to uptempo party-starters like "What You Need" with Lyrics Born, and "Hustle Up" with Boots Riley (which Mercurio calls "a total rock tune" dressed in funky threads); to semi-autobiographical tales of urban street life by Mr. Lif ("And I'm Out"), Vursatyl & Ohmega Watts ("Find My Home"), Lateef the Truth Seeker ("No Way"), Gift of Gab ("The Corner"), and Chali 2na ("Think Back").

Even with all the different vocalists, the songs maintain a sense of thematic consistency. As Ellman explains, this was by design: the rappers were each

Page 2 of 2

GALACTICFUNK.COM : BIOGRAPHY

asked to write about a corner. "It could have been any corner," he says. "Everyone had a different perspective." Many contemporary all-star collaborations are purely commercial exercises, yet From the Corner to the Block stands as a labor of love, connecting GALACTIC's hip-hop jones and their guests' fervor for funk aesthetics. The result isn't just the grooviest, funkiest record of 2007, but perhaps the finest post-Katrina album to come out of New Orleans.

SELECT A SKIN: | -- Select --

©2008 GALACTICFUNK.COM | SITE BY FAST ATMOSPHERE

5/29/2008

**ANTHONY E. MCNAMER CSB #178911**
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>**PLAINTIFFS**,<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT**. | **Case No. C-08-01931 JSW**<br><br>**RAYMOND RILEY'S DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17th Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

I, Raymond Riley, declare as follows:

1.      I am a resident of Oakland, California.

2.      I am a musician performing under the name Boots Riley and co-founder of

the hip-hop group The Coup.  I am managed by Kenneth Erlick and have been for several

years.

3.      I was raised amidst political action in Oakland, California, where, since the age of 15, I have been involved in organizing and inspiring youth.  From student organizing in Oakland's public schools, to serving on the central committee for the Progressive Labor Party, to holding the presidential position for InCAR (International Committee Against Racism), and organizing to build California's Anti-Racist Farm Workers' Union, I have involved in the progressive struggle for positive change through culture and use my music as a medium to promote that change.  My music has a decidedly anti-corporate message.

4.      I am friends with the band Galactic.  On occasion, I have been a guest artist for Galactic.  At a November 17, 2007 show at the Roseland Theater, I was one of three guest artists who performed with Galactic.

5.      I am not a member of the band Galactic or a shareholder in Galactic Funk Touring, Inc., and I have never been managed by Paul Peck. I have never claimed to be part of Galactic, or Galactic Funk Touring, Inc. and I have never told anyone that Paul Peck was my manager, or had any authority over me whatsoever.

6.      It is now my understanding Galactic is a sponsored Zig-Zag Artist for National Tobacco Company, LP.  At one performance I briefly socialized with the representatives of CMJ – who were apparently working for National Tobacco Company. Other than during that event, I have had no contact with National Tobacco.  I was unaware that Galactic had signed a sponsorship agreement with National Tobacco and never saw a copy of that agreement until National Tobacco's amended complaint was filed in the New York.

7.      It was recently discovered that, since October 17, 2007, National Tobacco

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

Company LP ("National Tobacco") has been using my name, likeness and biography to promote its products, specifically its Zig-Zag branded products.  National Tobacco featured me on their website as a "Zig-Zag Artist."   National Tobacco had no license or authority to use my name, likeness and biography and therefore violated my right of publicity.

8.     I was surprised and alarmed by National Tobacco identifying my name with its products.  Given the tobacco company's known exploitation of the African American community, I would never license my name, photograph or biography to promote tobacco products.

9.     On March 28, 2008 Lifesavas and I sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that it cease its violation of our right of publicity and compensate for its unlawful use of our name, likeness and biography to promote its products.

10.     National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New

York on April 4, 2008.  I was not served until April 19, 2008.

11.    On April 11, 2008 a substantive lawsuit was filed by me, Marlon Irving

and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for

the Northern District of California, Case No. C09-01931, for False Designation of Origin,

Misappropriation of Right of Publicity and Unfair Competition.  National Tobacco was

served on April 14, 2008 – seven days prior to my service in this matter.

12.    National Tobacco's use of my name, photograph and biography on its
website injures my professional reputation and my ability to perform in California, the
Pacific Northwest and throughout the United States.

13.    Other than the occasional performance in New York, I have no contacts

with New York.  I do not reside there.  All of the plaintiffs in this action reside in either

Oakland, California or Portland, Oregon.  I assume that we would be the primary

witnesses in this case, along with our managers, who also reside in California and Oregon.

We are all individuals, trying to make a living as musical artists.  It would be incredibly

expensive and inconvenient to force all three if us to prosecute an action in New York.

This is particularly true since National Tobacco is headquartered in Louisville, Kentucky,

and the only nexus New York has to this action is that National Tobacco's attorneys have

an office there.

I hereby declare that the above statement is true to the best of my knowledge and belief and

that I understand that is made for use as evidence in court and is subject to penalty for

perjury.


    EXECUTED on May 29, 2008 in Oakland, California

                                        Raymond Riley

**ANTHONY E. MCNAMER CSB #178911**
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

     Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>      **PLAINTIFFS**,<br><br>   v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>      **DEFENDANT**. | **C**ase No. C-08-01931 JSW<br><br>**[Proposed]**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>**Date: June, 20 2008**<br>**Time: 9:00 a.m.**<br>**Room: 2, 17**[th] **Floor**<br>**Before: Honorable Jeffrey S. White**<br><br>**[FILED VIA E-FILING]** |

Case No. C-08-01931
Page 1 – [Proposed] ORDER DENYING MOTION TO DISMISS, TRANSFER OR STAY

The motion of Defendant National Tobacco LP ("National Tobacco") to dismiss, stay or transfer in favor of its New York action; or in the alternative, to dismiss or transfer for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. 1406(a) or, in the alternative to transfer for the convenience of National Tobacco under 28 U.S.C. 1404(a) came regularly for hearing before this Court on June 20, 2008 at 9:00am.

After considering the moving and opposition papers, arguments of counsel, and all other matters presented to the Court, IT IS HEREBY ORDERED that:

National Tobacco's motion is hereby **DENIED.**

1.      Dismissal of this action is not warranted.  The prior filed action by National Tobacco against Plaintiffs and others in the United States District Court for the Southern District of New York was an anticipatory filing by National Tobacco.  National Tobacco filed its New York action on the day given by Plaintiffs' as a deadline to accept Plaintiffs' offer before Plaintiffs filed suit in California.  National Tobacco filed its New York suit in response to Plaintiffs cease and desist letter.  National Tobacco is improperly using the Declaratory Relief Act to forum shop.

2.      Dismissal of this action is not warranted under Fed. R. Civ. Proced. 12(b)(3) or 28 U.S.C. 1406(a).  Galactic Funk Touring Inc. did not act as Plaintiffs agent, ostensible or otherwise, and Plaintiffs are not bound by any forum selection clause or sponsorship agreement. Plaintiffs reside in Oakland, California and Portland, Oregon.  No relevant events took place in New York, and therefore venue is proper where the Plaintiffs reside.

3.    Transfer of this action is not warranted under 28 U.S.C. 1404(a).  Plaintiffs reside in Oakland California and Portland, Oregon.  National Tobacco has not shown that its inconvenience substantially outweighs the convenience of Plaintiffs choice of forum where they reside.

IT IS SO ORDERED.


Date:_____                    _____
                                                    The Honorable Jeffrey S. White
                                                    U.S. District Judge