1  Bruce H. Jackson, State Bar No. 98118
    bruce.h.jackson@bakernet.com
2  Irene V. Gutierrez, State Bar No. 252927
    irene.v.gutierrez@bakernet.com
3  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
4  San Francisco, CA 94111-3802
   Telephone: +1 415 576 3000
5  Facsimile:  +1 415 576 3099

6  Marcella Ballard, Admitted *Pro Hac Vice*
    marcella.ballard@bakernet.com
7  **BAKER & MCKENZIE LLP**
   1114 Avenue of the Americas
8  New York, NY 10036
   Telephone: +1 212 626 4100
9  Facsimile:  +1 212 310 1600

10 Attorneys for Defendant
   NATIONAL TOBACCO COMPANY, LP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAYMOND RILEY p.k.a. Boots Riley, SOLOMON DAVID and MARLON IRVING p.k.a. Lifesavas,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL TOBACCO COMPANY LP,<br><br>Defendant. | **Case No. C-08-01931 JSW**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY OR TRANSFER BY DEFENDANT NATIONAL TOBACCO COMPANY**<br><br>Date:         June 20, 2008<br>Time:         9:00 a.m.<br>Courtroom:  2, 17th Floor<br>Before:    The Honorable Jeffrey S. White<br><br>[FILED VIA E-FILING] |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

# **TABLE OF CONTENTS**

**Page No.**

SUMMARY OF ARGUMENT

I. INTRODUCTION ............................................................................................................. 1

II. FACTS ................................................................................................................................ 2

    A. Facts Related to the Application of the New York Forum Selection Clause ................ 2

    B. Facts Related to the Application of the First-To-File Rule ........................................... 4

III. ARGUMENT ...................................................................................................................... 4

    A. The Forum Selection Clause Mandates Venue in New York ....................................... 4

        1. Plaintiffs Are Bound Because Peck Was Their Agent ...................................... 5

        2. Plaintiffs' Close Relationship to the Galactic Funk Touring, Inc. and the Agreement Requires Enforcement of the Forum Selection Clause .................. 7

    B. The First to File Rule Applies ....................................................................................... 9

        1. NTC's New York Filing Was Neither in Bad Faith or Anticipatory ............... 9

        2. NTC Did Not Engage in Forum Shopping ..................................................... 11

        3. NTC's New York Filing is an Appropriate Use of the Declaratory Judgment Act ................................................................................................... 12

    C. The Circumstances Merit Transfer under 28 U.S.C. § 1404(a) .................................. 12

IV. CONCLUSION ................................................................................................................ 14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

i

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

**TABLE OF AUTHORITIES**

**Page No(s).**

Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guarantee Co.,
    2006 U.S. Dist. LEXIS 88627 (W.D. Wash. Dec. 4, 2006)..............................................1,6,11

Berclain America Latina v. Baan Co., 74 Cal. App. 4th 401 (1999)....................................................7

Best Western International v. Patel, 2008 U.S. Dist. LEXIS 19797
    (D. Ariz. Mar. 3, 2008).......................................................................................................13

Burrows Paper Corp. v. Moore & Associates, 2007 U.S. Dist. LEXIS
    52800 (N.D.N.Y July 20, 2007)...........................................................................................8

C.A.R. Transport Brokerage Co., Inc. v. Darden Restaurants, Inc.,
    213 F.3d 474 (9th Cir. 2000)................................................................................................6

Cardiovascular Imaging Systems v. Boston Sci. Corp.,
    1994 U.S. Dist. LEXIS 6722 (N.D. Cal. April 26, 1994)................................................13,14

Dex Prods. v. Houghteling, 2006 U.S. Dist. LEXIS 45237 (N.D. Cal. June 23, 2006) ...................11

District No. 1, Pacific Coast District, M.E.B.A. v. Alaska, 682 F.2d 797
    (9th Cir. 1982)..................................................................................................................12,13

Dora v. Frontline Video, 15 Cal. App. 4th 536 (1993)........................................................................8

Finger v Omni Publications International, Ltd., 77 N.Y.2d 138 (N.Y. 1990).....................................8

Gift v. Ahrnke, 107 Cal. App. 2d 614, 237 P.2d 706 (1951)...............................................................6

Graham Tech. Sol'ns, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427
    (N.D. Cal. 1997)..................................................................................................................7

Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264
    (C.D. Cal. 1998).................................................................................................................12

Hovley v. Frank Meline Co., 83 Cal. App. 441, 257 P. 112 (1927).....................................................6

Jamba Juice Co. v. Jamba Group, Inc., 2002 U.S. Dist. LEXIS 9459
    (N.D.Cal. May 15, 2002) ..................................................................................................11

Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509 (9th Cir. 1988).......................................7

North Am. Cas. Ins. Co. v. Encompass Power Serv., Inc.,
    2005 U.S. Dist. LEXIS 33314 (E.D. Cal. Dec. 16, 2005) .......................................................11

Nureau Ink, LLC v. Zomba Recording, LLC, 2006 U.S. Dist. LEXIS 87240
    (S.D. Cal. Nov. 29, 2006) ...................................................................................................8

Palantir Technologies, Inc. v. Palantir.net, Inc., 2007 U.S. Dist. LEXIS 76830
    (N.D. Cal. Oct. 2, 2007).................................................................................................9,12

ii

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

Royal Queentex Enterprises v. Sara Lee Corp., 2000 U.S. Dist. LEXIS 10139
    (N.D. Cal. Mar. 1, 2000) ........................................................................................... 10,12

Steelcase, Inc. v. Haworth, Inc., 1996 U.S. Dist. LEXIS 20674
    (C.D. Cal. May 15, 1996) ................................................................................................ 13

The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ..................................................... 5

Tolentino v. Mossman, 2007 U.S. Dist. LEXIS 95717 (E.D. Cal. Dec. 13, 2007) ............... 8

Wiley v. Trendwest Resorts, Inc., 2005 U.S. Dist. LEXIS 38893
    (N.D. Cal. Aug. 10, 2005) ........................................................................................... 12,13

Xoxide, Inc. v. Ford Motor Co., 448 F. Supp. 2d 1188 (C.D. Cal. 2006) ........................... 10

Z-Line Designs, Inc. v. Bell'O International LLC, 218 F.R.D. 663
    (N.D. Cal. 2003) ............................................................................................................ 9,10

## **STATUTES**

28 U.S.C. 1391(b)(2) ....................................................................................................... 11,12

28 U.S.C. § 1404(a) ............................................................................................................. 12

28 U.S.C. § 1406(a) ............................................................................................................... 9

28 U.S.C. 1746 ....................................................................................................................... 1

Cal. Civ. Code §§ 2307, 2310 ................................................................................................ 7

Cal. Civ. Code §3334(d) ........................................................................................................ 8

Cal. Civil Code § 2317 ........................................................................................................... 6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

iii

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

## SUMMARY OF ARGUMENT

The forum selection clause in the contract between defendant NTC and Galactic Funk Touring, Inc. mandates that venue shall be in New York. Galactic Funk Touring, Inc.'s manager had actual and apparent authority to contract on behalf of Plaintiffs. Cal. Civil Code § 2317. Plaintiffs knew of and accepted the benefits of NTC's sponsorship. (Chane Reply Dec. & Ex. A-E). Further, Plaintiffs' claims are so closely related to the Agreement between NTC and Galactic Funk Touring, Inc. that the forum selection clause within that Agreement should dictate where this dispute is resolved. See Graham Tech. Sol'ns, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427 (N.D. Cal. 1997). Indeed, the resolution of this dispute relates to the interpretation of the Agreement. Id.

The first to file rule also dictates that New York is the appropriate venue for this matter. No exception to the first file rule can be found in the facts herein. See Palantir Technologies, Inc. v. Palantir.net, Inc., No. 07 Civ. 3863, 2007 U.S. Dist. LEXIS 76830, at *1 (N.D. Cal. Oct. 2, 2007). NTC was neither secretive nor misleading regarding the filing of its declaratory judgment action, and was entitled to do so, having clearly rejected Plaintiffs' demands. See Royal Queentex Enters. v. Sara Lee corp., 2000 U.S. Dist. LEXIS 10139, at *13 (N.D. Cal. Mar. 1, 2000). NTC also did not engage in forum shopping, as the numerous connections between this dispute and New York justify that venue. Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guarantee Co., 2006 U.S. Dist. LEXIS 88627, at *10 (W.D. Wash. Dec. 4, 2006).

Finally, as all of the operative facts of the dispute occurred in New York, and the most relevant witnesses are in New York, the circumstances merit transfer under 28 U.S.C. § 1404(a). See Steelcase, Inc. v. Haworth, Inc., 1996 U.S. Dist. LEXIS 20674, at *6 (C.D. Cal. May 15, 1996). Transfer would also serve the interests of justice by allowing the courts to avoid a multiplicity of litigation. See Wiley v. Trendwest Resorts, Inc., 2005 U.S. Dist. LEXIS 38893, at *7 (N.D. Cal. Aug. 10, 2005).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

## I. INTRODUCTION

Plaintiffs' opposition to NTC's motion to dismiss, stay or transfer falls short primarily because they have utterly failed to overcome the fact that they are bound by a forum selection clause in an Artist Sponsorship Agreement (the "Agreement") under theories of ostensible authority, their undisputed "close relationship" to the signatory to the Agreement, and that the dispute undoubtedly "relates to" the Agreement. Given the strong federal policies in favor of otherwise *prima facie* valid forum selection clauses, and the fact that Plaintiffs have not even tried to show that New York is a "gravely difficult" forum, this Court should dismiss this action in favor of the first filed New York Action pursuant to the unequivocal language in the Agreement mandating a New York venue.

Plaintiffs have also failed to carry their burden to demonstrate that any of the exceptions to the well-established first-to-file rule apply, where, as here, (1) the Agreement is signed by two New York residents, (2) the majority of the witnesses reside in New York, (3) one of the disputed concerts took place in New York, (4) the website at issue is directed and controlled from New York, and, (5) other than the temporary residence of some, but not all, of the Plaintiffs in California, this State has absolutely no connection with the dispute. In a misguided effort to tailor the exceptions to the first-to-file rule to their arguments, Plaintiffs have misrepresented two keys facts: first, that the New York Action was filed before counsel for NTC spoke to Plaintiffs' counsel (it was not); and second, that NTC's counsel "secretly" filed the Action while still operating under the "pretense" of negotiating a settlement (they did not). See Reply Declaration of Marcella Ballard dated June 6, 2008 ("Ballard Reply Dec.").[1] For these reasons, and as we set forth below, NTC's motion should be granted.[2]

---

[1] There are other less egregious misstatements of fact: (1) that NTC has offices in California—it does not; (2) the only relation to New York is a single concert—this is incorrect; (3) Peck has never purported to represent Plaintiffs—this is disputed by his own declaration in which he concedes "representing" Plaintiffs in relation to the promotional showbills for the performances covered under the Agreement; (4) the original letter was sent from "California"—this may be true but it contains only the Portland, Oregon address of Plaintiffs' counsel; (5) Plaintiffs have "nothing approaching" an "entwining" business relationship with Galactic—this is false, as Boots Riley is still touring with Galactic today.

[2] Although Plaintiffs purport to submit "sworn" declarations, the declarations do not comport with 28 U.S.C. 1746, and merely set forth items to the best of the declarant's "belief." The failure by Plaintiffs to properly attest to the declarations and other evidentiary objections are the subject of a separate objection and motion to strike.

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

## II. FACTS

**A. Facts Related to the Application of the New York Forum Selection Clause**

NTC contracted with the entity "Galactic Funk Touring, Inc." to "sponsor [Galactic Funk Touring Inc.'s] performance ("Performance") as part of the Zig Zag Live Club Tour 2007" ("Tour") on four dates in October and November 2007 at four specific venues. (McDonald Dec. Ex. A at p. 1, § 1). All Plaintiffs in this action in fact participated at each of the four listed performances, in New York, NY, Boston, MA, Raleigh NC and Athens, GA. Manager Paul Peck signed the Agreement on behalf of Galactic Funk Touring, Inc.-- an entity that was neither described further nor set forth specifically in the Agreement. (Peck Dec; McDonald Dec. Ex. A at p. 3). It was Peck – not NTC – who indicated to NTC's agent CMJ that the artists on the ZigZagLive tour dates would be comprised of Galactic, Boots Riley and Lifesavas. (McDonald Reply Dec. ¶¶ 6-8). It was Peck – not NTC – who provided the names and showbill materials to ZigZagLive for use in the promotional materials for the tour. (McDonald Reply Dec. ¶¶ 6-7). And it was Plaintiffs – not NTC – who, in the Fall of 2007, voluntarily autographed promotional posters <u>prominently containing the "ZigZagLive" insignia</u> for display on, and distribution to, the viewers of the very ZigZagLive website they purportedly "discovered" for the first time in March 2008.[3] (<u>Id.</u> ¶¶ 19, 20, 21, 24). In fact, CMJ informed Plaintiffs that the posters would be used in connection with the ZigZagLive internet marketing campaign and Plaintiffs indicated that they were enthusiastic about the ZigZagLive sponsorship. (Chane Reply Dec. ¶¶ 3-7).

The Agreement authorized ZigZagLive to promote the Performances. (McDonald Dec. Ex. A at p. 1, § 2). The parties agreed that "[w]here possible, ZZL will provide all ZZL Marketing to you for approval." (McDonald Dec. Ex. A at p. 2, § 2). Peck directed ZigZagLive to a "Galactic Funk" website containing the professional names and likenesses of Plaintiffs, along with the band

---

[3] This sharply undermines the credibility of the artists and their "sworn" declarations. None of the artists is claiming that he himself actually "discovered" the ZigZagLive website in March 2008, as each uses the passive voice to describe that "discovery." (Riley Dec at ¶ 7 ("It was discovered…"); David Dec. ¶ 7 (same); Irving Dec. ¶ 7(same)). Apparently, none of the artists is willing to take credit for that "discovery," nor could they credibly do so given their signatures on the ZigZagLive posters dated in 2007. (McDonald Reply Dec. Ex. F, G). There is a complete absence of explanation by Plaintiffs for the autographing of ZigZagLive tour posters, a fact that Ms. Chane set forth in her moving declaration. (Chane Dec. at ¶ 4). Both Boots Riley and each member of Lifesavas signed the tour posters in 2007.

2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

"Galactic" and others. (McDonald Dec. ¶ 3). ZigZagLive then submitted proposed artwork to Peck for approval, to which Peck responded "I have no problem with the general look of it but need for the bands, guest MC and support info to be as a whole larger . . . . Please make the band info and all of the artist info the biggest info in the image." (McDonald Dec. ¶ 4, Ex. C (emphasis added)). After ZigZagLive revised the references to Plaintiffs and the other artists to Peck's specifications, Peck approved the marketing. (Id.).

At the sponsored performances, Plaintiffs appeared at the ZigZagLive exhibition tables set up in accordance with § 2 of the Agreement, accepted Zig-Zag branded merchandise, and signed the ZZL Marketing bearing the ZigZagLive logo and plaintiffs' names. Plaintiffs were enthusiastic about the sponsorship. (Chane Reply Dec. ¶¶ 3-7). Although Plaintiffs attested that their only contact with NTC was "briefly social[izing] with the representatives of CMJ – who were apparently working for" NTC (Riley Dec. ¶ 6; David Dec. ¶ 6; Irving Dec. ¶ 6), the contact they did have at the sponsored performances was clearly contact with NTC's "ZigZagLive" representatives as the tables, booths and representatives with whom they "politely" interacted were literally brimming with Zig-Zag merchandise. (See Chane Reply Dec. Ex. A-E; McDonald Reply Dec. Ex. A-D). Plaintiffs provide no evidence to support the distinction they are trying to make between Peck's authority to approve ZZL Marketing using their names and likenesses – the showbills and print advertisements – and his alleged lack of authority to agree to other use of likeness matters governed by the same section and paragraph of the Agreement. (McDonald Dec. Ex. A at § 2, pp. 1-2).

Instead, their declarations prove that they delegated authority to Peck to make all arrangements for the sponsored performances under the Agreement. Plaintiffs' manager Kenneth Erlick, acknowledges that he abdicated to Peck authority over use of his clients' professional names and likenesses: "I knew that Boots Riley and Lifesavas were playing some shows along with Galactic (along with many other artists) and assumed that there would be fliers listing my guys on the bill." (Erlick Dec. ¶ 7 (emphasis added)). In keeping with the expectations of Plaintiffs' manager, Peck took care of the marketing materials: "[a]t times during our touring Lifesavas appeared as an opening act and Raymond Riley was a guest artist (usually one of many). Since Galactic was the headlining act for that show, I took care of the show bill." (Peck Dec. ¶ 7

3

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

(emphasis added)). That "show bill" prominently contained both Plaintiffs' names and the ZigZagLive logo.

B. **Facts Related to the Application of the First-To-File Rule**

NTC received a letter from Plaintiffs' counsel on March 28, 2008. (Ballard Reply Dec. ¶ 2). In that letter, Plaintiffs demanded payment of over $400,000 from NTC, alleging that NTC impermissibly used their names and likenesses on its ZigZagLive.com website. (Id. ¶¶ 2-3; see id. Ex. 1). Plaintiffs' counsel demanded that NTC settle by making payment to Plaintiffs by April 4, 2008, or Plaintiffs would make public statements "decrying" any affiliation with NTC. (Id. ¶ 3; see id. Ex. 1). Plaintiffs' counsel additionally stated that his clients also intended to file suit in California and Oregon, but did not state a date on which they would do so. (Id. ¶ 4).

Through counsel, NTC unequivocally rejected Plaintiffs' demands on April 4, 2008 via both letter and by telephone. (Id. ¶¶ 6-9; see id. Ex. 2). Counsel for NTC explained in no uncertain terms that NTC would not make the demanded monetary payment, and that Plaintiffs' allegations were meritless. (Id.). After rejecting Plaintiffs' claims via telephone, NTC then filed suit in New York on the afternoon of April 4, 2008. (Id. ¶ 10). NTC served Plaintiffs' counsel with a complaint on Monday April 7, 2008, as soon as it had received a file-stamped copy back from the New York Court, which had closed down at the late hour in the day on the previous Friday when NTC filed. NTC amended its complaint as of right on Wednesday, April 9, 2008. (Id. ¶¶ 13-14, 18). Plaintiffs did not file their action until Friday, April 11, 2008, a full week after NTC. (Id. ¶ 19).

### III.   ARGUMENT

A. **The Forum Selection Clause Mandates Venue in New York**

Plaintiffs Boots Riley and Lifesavas, who both appeared with the band Galactic on all four concert dates enumerated in the Artist Sponsorship Agreement are bound by the forum selection clause in the Agreement on three bases: 1) Galactic Funk Touring Inc.'s manager had actual or apparent authority to contract on their behalf; 2) even if Galactic Funk Touring Inc. lacked authority, Plaintiffs are so closely related to the Galactic Funk Touring Inc. and the Agreement that the forum selection clause governs; and (3) the resolution of the dispute relates to the Agreement.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

4

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

Forum selection clauses are <u>prima facie</u> valid and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." <u>The Bremen v. Zapata Off-Shore Co</u>*., 407 U.S. 1, 15 (1972).* Plaintiffs have not demonstrated why enforcement is unreasonable nor have they (or could they) establish the clause was the result of fraud. Plaintiffs would need to show that trial in New York would be so "gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court." <u>The Bremen</u>*, 407 U.S. at 18.* Plaintiffs routinely tour across the country as "nationally touring recording artists" and appear often in New York to play concerts. New York as a venue would hardly be "gravely" difficult for them and they have not seriously contended that it would be, since their attorney Anthony McNamer does not reside in California either, and will need to travel to either jurisdiction.

### 1. Plaintiffs Are Bound Because Peck Was Their Agent

As set forth above, Plaintiffs ceded to Peck control over use of their names and likenesses in connection with Galactic Funk Touring, Inc. Plaintiffs argue about whether bands have merged or they, together with Galactic, are "members of a group." (Pls. Opp. at pp. 12-14). However, it is irrelevant whether Plaintiffs were "members" of a band called Galactic[4] particularly where, as here, the entity signing the Agreement was "Galactic Funk Touring, Inc" and Plaintiffs toured with Galactic Funk Touring, Inc. group on the dates in the Agreement. The Agreement does not enumerate the specific members of Galactic Funk Touring, Inc. Plaintiffs admittedly allowed Galactic Funk Touring, Inc. to make the arrangements for their shows and then voluntarily and willingly performed, came to the ZigZagLive tables festooned with the promotional materials bearing their names and the ZigZagLive logos, and proceeded to sign posters clearly featuring the ZigZagLive logos so that ZigZagLive could post them on the ZigZagLive website to give them out to fans who requested them. (McDonald Reply Dec. Ex. E).

---

[4] Plaintiffs' claims not to be affiliated with Galactic Funk Touring Inc. are undercut by their continuing presence on the www.galacticfunk.com website, which shows that Boots Riley will perform a dozen times over the next few months in locales ranging from Virginia to Europe to Japan. Vursatyl of Lifesavas is featured as the vocalist on song clips playing on the GalacticFunk website.

5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

The fact that Plaintiffs did not expressly represent that Galactic Funk Touring, Inc. had authority to enter the Agreement is likewise irrelevant regarding the applicability of the Agreement and its forum selection clause to them. "[I]t is not true that the principal must make explicit representations regarding the agent's authority." C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000). Authority may be implied from the circumstances of a particular case; ostensible authority applies where the principal negligently allows others to believe the agent has authority. Id. at 479-80 (citing Cal. Civil Code § 2317). Plaintiffs and their manager Erlick "assumed" that Galactic Funk Touring, Inc. would handle publicity arrangements for the shows, and allowed ZigZagLive to rely on Galactic Funk Touring, Inc.'s authority. When presented with the posters that arose from Galactic Funk Touring, Inc.'s representations, Plaintiffs did not question why their names and likenesses were associated with ZigZagLive; instead, they willingly signed posters prominently featuring the ZigZagLive insignia to be posted on the website and given out as promotional material to fans. (McDonald Reply Dec. Ex. F, G).

Further, Plaintiffs performed for crowds who attended the concerts through ZigZagLive promotional efforts approved by Galactic Funk Touring, Inc., including show bills, and newspaper and other ad placements paid for by ZigZagLive. Plaintiffs did not disclaim these promotions after becoming aware of them. Plaintiffs all received the benefit of promotion of the Performances through the ZigZagLive materials bearing Plaintiffs' professional names. (McDonald Dec. ¶¶ 4, 6, Ex. B (listing newspapers to be used in promotions); Chane Dec. Ex. A). Plaintiffs cannot cherry-pick from the Agreement, accepting the benefits of publicity, promotional efforts, and expenditures supporting the same, while eschewing the forum selection clause. "A man cannot hold another out before the public as his agent having authority of a general character and take the benefits of his acts when he considers them favorable to him and repudiate his agent's acts when he considers them unfavorable." Hovley v. Frank Meline Co., 83 Cal. App. 441, 443, 257 P. 112, 113 (1927). See also Gift v. Ahrnke, 107 Cal. App. 2d 614, 623, 237 P.2d 706, 712 (1951) (holding that a principal "cannot split the agency transaction into separate parts, and take the benefits without the burden"). In addition to inducing NTC's reliance for its ongoing publicity, Plaintiffs' actions in signing the

6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

ZigZagLive-logo posters for distribution and accepting the benefits of publicity for the Performances ratify the Agreement entered into by their agent.  Cal. Civ. Code §§ 2307, 2310.

### 2. Plaintiffs' Close Relationship to the Galactic Funk Touring, Inc. and the Agreement Requires Enforcement of the Forum Selection Clause

As set forth in NTC's moving papers, without regard to the issue of agency, Plaintiffs are bound by the forum selection clause because of their close relationship to the contract.  Plaintiffs dedicate only a footnote to arguing that they are not sufficiently closely related to the Agreement (and Galactic Funk Touring, Inc.) that they should be bound.  See Opp. p. 14 n.6.  They cite a California Court of Appeals case, Berclain America Latina v. Baan Co., 74 Cal. App. 4th 401, 407 (1999), notwithstanding that Federal law governs the enforcement of forum selection clauses.  See Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988) ("Federal law applies to interpretation of forum selection clauses.").  Even if Berclain were binding, Plaintiffs misstate the test set forth therein, asserting that a moving party must show all three factors, as the case sets out that the moving party must satisfy any *one* of the three criteria.  NTC has already established the third, *i.e.,* that there was sufficient evidence of a defined and intertwining business relationship to support the application of the clause.  Berclain, 74 Cal. App. 4th at 407 (party must show (1) agreement to be bound, (2) contracting parties' intent to benefit a third party, "or (3) there was sufficient evidence of a defined and intertwining business relationship with a third party") (emphasis added).  Of course, Peck's assumption of authority over the promotional showbills (Peck Dec. ¶ 7) also establishes Galactic Funk Touring, Inc.'s intent to benefit Plaintiffs (point 2 of the test).

Plaintiffs also fail to meaningfully distinguish the cases cited in NTC's moving papers.  The Ninth Circuit approach "upholds the forum selection clause where the claims alleged in the complaint relate to the interpretation of the contract."  Graham Tech. Sol'ns, Inc. v. Thinking Pictures, Inc., 949 F.Supp. 1427 (N.D. Cal. 1997) (transferring action to Southern District of New York under forum selection clause where claims ultimately required reference to agreement containing clause) (emphasis added).  Plaintiffs undisputedly took part in the four performances in New York, Massachusetts, North Carolina and Georgia on the dates set forth in the Agreement.  The signatory to the Agreement, Peck, undisputedly informed CMJ (NTC's agent) of Plaintiffs'

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

7

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

appearances at those shows in connection with the Agreement and NTC's exercise of its promotion and publicity rights under the Agreement. (McDonald Reply Dec. ¶¶ 5-12). Peck also undisputedly approved the use of Plaintiffs' names on promotional materials pursuant to, and after the Agreement was executed. (McDonald Dec. Ex. C) Therefore, Plaintiffs' claims concerning the use of promotional materials and the ZigZagLive website clearly "relate to" interpretation of the Agreement.

Peck, who is located in New York, is inextricably involved with both Plaintiffs and the contractual relationship with NTC. See Nureau Ink, LLC v. Zomba Recording, LLC, 2006 U.S. Dist. LEXIS 87240 (S.D. Cal. Nov. 29, 2006)(dismissing case in which non-party's claim "inextricably involve[d]" the contractual relationship governed by the forum selection clause). Plaintiffs have also entirely failed to dispute that they are in a business relationship with Galactic Funk Touring Inc. and "entered into an agreement [with Galactic Funk Touring, Inc.] to work together, to perform various functions and services . . ." See Tolentino v. Mossman, 2007 U.S. Dist. LEXIS 95717 (E.D. Cal. Dec. 13, 2007) (compelling adherence to forum selection clause). Plaintiffs' participation with Galactic on the four dates in the Agreement on stage, at the tour, and on the promotional materials approved by Galactic Funk Touring, Inc.'s manager mandates that the Agreement applies to them as well.

The validity of Plaintiffs' claims depends upon and is inextricably entwined with the construction of the Agreement.[5] Plaintiffs acted in concert – pardon the pun – together with the band "Galactic" at the sponsored Performances. The Agreement signatories intended to benefit, and did benefit Plaintiffs through the publicity for the shows and through ZigZagLive promotions both pre-show and continuing on the ZigZagLive website. "As a matter of law, a third-party beneficiary of a contract is closely related to the signatories such that the invocation of a forum-selection clause by any of the three parties is foreseeable." Burrows Paper Corp. v. Moore & Assocs., 07 Civ. 62, 2007

---

[5] Even if the Agreement were not applicable to Plaintiffs, NTC contends that the material on the ZigZagLive website is protected as newsworthy or public affairs information. Cal. Civ. Code §3334(d); Dora v. Frontline Video, 15 Cal. App. 4th 536 (1993); Finger v Omni Publications Int'l, Ltd., 77 N.Y.2d 138 (N.Y. 1990). However, if the Agreement authorizes use of Plaintiffs' likenesses, the issue of newsworthiness will be moot.

8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

U.S. Dist. LEXIS 52800, at *7 (N.D.N.Y July 20, 2007) (transferring case under 28 U.S.C. § 1406(a)).

**B.    The First to File Rule Applies**

Plaintiffs do not dispute that the action filed by NTC in the Southern District of New York was the first filed. They do not challenge NTC's assertion that the parties are identical. They do not argue that the issues are dissimilar. These are the factors a court in the Ninth Circuit must consider in determining whether to apply the first filed rule. See Palantir Technologies, Inc. v. Palantir.net, Inc., No. 07 Civ. 3863, 2007 U.S. Dist. LEXIS 76830, at *1 (N.D. Cal. Oct. 2, 2007). Instead, they argue that an exception must apply. However, as shown in NTC's moving papers as well as below, Plaintiffs have failed to carry their burden to demonstrate that an exception applies.

**1.    NTC's New York Filing Was Neither in Bad Faith or Anticipatory**

While it is true that bad faith or anticipatory filings may merit an exception to the first filed rule, see Z-Line Designs, Inc. v. Bell'O International LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003), Plaintiffs can only characterize NTC's actions as in bad faith or anticipatory by twisting the facts of the matter. To that end, the brief submitted by Plaintiffs is factually inaccurate – NTC did not file the New York complaint prior to talking to Plaintiffs' counsel. (Ballard Reply Dec. at ¶¶ 10-12). NTC neither filed suit secretly, nor maintained the pretense of negotiation. (Id. at ¶¶ 6-12). In rejecting Plaintiffs' legal allegations by letter, NTC clearly stated "We disagree with your contentions in all respects." (See Id. Ex. 2). Before filing, NTC explicitly rejected Plaintiff's demand for over $400,000 by letter and by telephone, stating, "your calculation of damages . . . bears no relationship whatsoever to either [of Plaintiffs' claims]. We thus cannot offer to pay the amounts you have demanded in your March 28 letter." (Id.). While counsel for NTC offered to "discuss" the situation with counsel for Plaintiffs, it was made quite clear that the discussion would not be over a settlement amount, but about the "fundamental misunderstanding" counsel had. (Id.). Indeed, in the telephone discussion between counsel, occurring hours after NTC's counsel sent Plaintiffs' counsel the letter described above, NTC's counsel reiterated NTC's position that the Plaintiffs' claims against NTC had no merit, and that NTC would not be offering Plaintiffs a monetary settlement. (Id. ¶ 9). In response, Plaintiffs' counsel would not budge from his earlier

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

1  stated position, despite clarification of the facts by NTC's counsel, and even attempted to pressure
2  NTC's counsel into settling by mentioning a $2.5 million judgment won by Tom Waits in a factually
3  inapposite right of publicity matter. (Id. ¶ 11. see id. Ex. 3). Indeed, at this point, NTC had already
4  removed the allegedly infringing materials from the ZigZagLive.com website as a courtesy to
5  Plaintiffs, and notified Plaintiffs that it had done so.  Only once it was clear that Plaintiffs expected
6  sums of money which would never be acceptable to NTC did NTC file the complaint in New York,
7  seeking to have its rights in reference to the ZigZagLive.com website clarified by a court. (Id.).

8        NTC "clearly had the right both to reject [Plaintiffs'] offer to discuss settlement and to take
9  an aggressive stance by immediately filing a declaratory judgment action upon receiving the cease
10 and desist letter," just as the plaintiff in Royal Queentex did. Royal Queentex Enters. v. Sara Lee
11 Corp., No. 99 Civ. 4787, 2000 U.S. Dist. LEXIS 10139, at *13 (N.D. Cal. Mar. 1, 2000). NTC did
12 not mislead Plaintiffs or use improper tactics in order to file first. See id. NTC did not imply that it
13 was considering the merits of Plaintiff's claims – it rejected their claims and their demands outright.
14 See id. at *14. The instant case is therefore distinguishable from those cited by Plaintiffs, including
15 Z-Line Designs, 218 F.R.D. at 666, where Z-Line mislead the defendant into thinking that the parties
16 would explore settlement by accepting an extended deadline, but then filed suit a day prior to that
17 deadline. Id.

18       Nor is the instant case like Xoxide, Inc. v. Ford Motor Co., 448 F. Supp. 2d 1188 (C.D. Cal.
19 2006), also cited by Plaintiffs. In Xoxide, the plaintiff in the first filed motion essentially "parked" a
20 filing date and venue by filing a declaratory judgment, while purporting to "consider" the defendants
21 claims against them for some time after the filing date. Id. at 1191, 1194. Plaintiff additionally
22 made no effort to serve the defendant for over three weeks after that point, and only served after
23 telling the defendant that plaintiff had commenced an action as "insurance" that the case would
24 proceed in "the forum of [its] choosing." Id. at 1192, 1194. Under those specific circumstances, the
25 court found that the plaintiff's suit was anticipatory and an attempt at forum shopping –
26 circumstances which are easily distinguished from the ones at hand. NTC did not continue
27 settlement discussions after unequivocally rejecting Plaintiffs' demand. NTC also did not sit on its
28 filed complaint, but instead immediately forwarded it to Plaintiffs' counsel upon receiving a file-

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

10

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

stamped copy from the court. Any delays in service were due solely to Plaintiffs' counsel's <u>refusal to accept service on their behalf.</u> (Ballard Reply Dec. ¶ 21, 22).

Finally, Plaintiffs allege no facts that would support a finding of bad faith. As stated in NTC's moving papers, bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." <u>North Am. Cas. Ins. Co. v. Encompass Power Serv., Inc.</u>, No. 05 Civ. 1587, 2005 U.S. Dist. LEXIS 33314, at *16 (E.D. Cal. Dec. 16, 2005). NTC was entirely upfront with its intentions throughout this entire dispute. It engaged in no secretive or deceptive practices.

### 2. NTC Did Not Engage in Forum Shopping

NTC's choice to file suit is not an example of forum shopping, which occurs only where "the first filed suit bears a <u>slight connection</u> to the forum in which it was filed as opposed to a stronger connection in the second forum." <u>Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guarantee Co.</u>, No. 06 Civ. 1254, 2006 U.S. Dist. LEXIS 88627, at *10 (W.D. Wash. Dec. 4, 2006) (emphasis added). As established above, NTC's chosen forum of New York bears a considerably stronger connection to the action, than does the Northern District of California. Accordingly, there is substantial evidence before the court supporting a selection of a New York forum and defendants have thus totally failed in their burden of establish the forum shopping exception. As <u>Dex Prods. v. Houghteling</u>, No. 05 Civ. 5126, 2006 U.S. Dist. LEXIS 45237 (N.D. Cal. June 23, 2006) makes clear, venue under 1391(b)(2) depends upon the location of the actions of the allegedly infringing party, whether as defendant or plaintiff in a declaratory judgment action. <u>Id.</u> at *22-23 & n.6. Because NTC runs its website from New York and the events and related publicity occurred on the East coast, venue for NTC is proper only in New York or other judicial districts where the performances occurred, and was certainly not the result of forum shopping. On the other hand, California, the second filed forum, lacks all factual contacts to the action. Plaintiffs have not pointed to any evidence within California that is relevant to the action.[6] Accordingly, this court should not find that NTC engaged in improper forum shopping by filing in New York.

---

[6] Plaintiffs curiously cite <u>Jamba Juice Co. v. Jamba Group, Inc.</u>, No. 01 Civ. 4846, 2002 U.S. Dist LEXIS 9459 (N.D.Cal. May 15, 2002) to assert that New York's only connection to this action is the availability of the website in New York. <u>Jamba Juice</u> in fact establishes that plaintiffs' allegations that they feel harmed within this district provide no basis for venue; instead, it is the actions of the allegedly infringing defendant that are dispositive under 28 U.S.C. 1391(b)(2), and those actions

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

11

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

### 3.  NTC's New York Filing is an Appropriate Use of the Declaratory Judgment Act

Plaintiffs argue that that when declaratory relief action is triggered by a cease and desist letter, the recipient should allow the sender of the letter to file first.  However, the recipient should not have to wait, with the specter of possible litigation floating over its head, for the sender to get around to filing when the recipient understands that there is a legal dispute which it feels should be resolved by a court.  See Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 272 (C.D. Cal. 1998) ("[A] declaratory action is an appropriate vehicle to 'alleviate the necessity of waiting indefinitely for a patent owner to file an infringement action.").  There is no bright line rule that holds that an infringement action should proceed instead of a declaratory judgment action.  See, e.g. Royal Queentex Enters. Inc., 2000 U.S. Dist. LEXIS 10139, at *11 (applying first filed rule in trademark case where plaintiff sought a declaratory judgment).

Plaintiffs' initial letter to NTC may have stated that they "will" file suit if NTC did not agree to pay over $400,000 by a date certain, but they did not state *when* they would file suit.  See Palantir Technologies, 2007 U.S. Dist. LEXIS 76830, at *2-3, 4.  This statement was sufficient to notify NTC that there was an actual case and controversy between Plaintiffs and itself, but did not contain specific, concrete indications that suit itself was imminent.  See Royal Queentex, 2000 U.S. Dist. LEXIS 10139, at *16-17. Obviously Plaintiffs had no intention of filing suit in California and Oregon on April 4, since it took them a week to get a case on file after NTC filed suit.  NTC's choice of forum in New York should therefore be accorded proper deference.

### C.  The Circumstances Merit Transfer under 28 U.S.C. § 1404(a)

The Southern District of New York has complete personal jurisdiction over the Plaintiffs, and subject matter jurisdiction over the claims.  See Wiley v. Trendwest Resorts, Inc., No. 04 Civ. 4321, 2005 U.S. Dist. LEXIS 38893, at *7 (N.D. Cal. Aug. 10, 2005).  Further, venue is proper there.  Id. For the purposes of venue, "a claim arises 'in any district in which a substantial part of the act, events, or omissions occurred that gave rise to the claim for relief."  District No. 1, Pacific Coast

---

must be more than having a generally accessible website.  Id. at *6-8.  As established in the declarations of Winifred Chane and Matt McDonald, NTC's actions took place in New York, Boston, Raleigh and Athens, Georgia.  Plaintiffs have failed to allege any action by NTC in this district.  Venue is proper under 1391(b)(2) only outside this district.

12

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

District, M.E.B.A. v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982). Contrary to Plaintiffs' assertions, NTC does not base its claims that venue is proper based on the fact that the website can be viewed from New York, nor solely based on a single show in New York. Since the "operative facts" of this case occurred within New York – the facts surrounding the posting of the material on the ZigZagLive website – NTC's choice of forum is the better one. Compare Steelcase, Inc. v. Haworth, Inc., No. 96 Civ. 1964, 1996 U.S. Dist. LEXIS 20674 at *6 (C.D. Cal. May 15, 1996) (supporting transfer away from forum of original selection when operative facts did *not* occur there).

"The convenience of the witnesses is often the most important factor considered by the court when deciding a motion to transfer for convenience." Steelcase, 1996 U.S. Dist. LEXIS 20674, at *8. Essentially all of NTC's witnesses live and work in New York. Specifically, Winifred Chane, NTC's agent at CMJ is a New York resident who will testify as to interaction between the Plaintiffs and NTC's agents at performances in New York and Boston. Matt McDonald, another New York based agent of NTC at CMJ, negotiated the agreement with Paul Peck. Paul Peck himself is located in New York. Bobby Haber, also a New York based NTC agent at CMJ, will testify as to the contents and display dates of the ZigZagLive website. In contrast, Plaintiffs have not meet their "burden of 'demonstrating an inconvenience to witnesses'" in opposing NTC's motion. Best Western Int'l v. Patel, No. 07 Civ. 807, 2008 U.S. Dist. LEXIS 19797, at *20 (D. Ariz. Mar. 3, 2008). Other than two of the three Plaintiffs, no one with knowledge of information relevant to this dispute resides in Northern California.

NTC has also established that granting the instant motion to transfer venue would serve the interests of justice. Wiley, 2005 U.S. Dist. LEXIS 38893, at *9. Specifically, transfer would allow the courts to avoid multiplicity of litigation stemming from a single set of occurrences. Id. at *10. Because Plaintiffs and their associates in the related matter (i.e., Blackalicious) filed two separate suits here in California, the less convenient forum, judicial economy favors having these related disputes resolved in one case by one judge, as is the case in New York. See id. ("The feasibility of consolidation is also a significant factor in a transfer decision."); see also Cardiovascular Imaging Systems v. Boston Sci. Corp., No. 93 Civ. 20902, 1994 U.S. Dist. LEXIS 6722, at *8 (N.D. Cal.

13

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

April 26, 1994) (agreeing that "it would be a waste of judicial resources for two courts to try different cases between the same parties where the subject matter of both cases is closely related").

### IV. CONCLUSION

For the foregoing reasons, NTC respectfully requests that the Court grant its motion.

Dated: June 6, 2008

Respectfully submitted,

**BAKER & McKENZIE LLP**
BRUCE H. JACKSON
IRENE V. GUTIERREZ

**BAKER & McKENZIE LLP**
MARCELLA BALLARD

By: /s/
　　Marcella Ballard
Attorneys for Defendant
NATIONAL TOBACCO COMPANY, LP

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

14

Case No C-08-01931 JSW
REPLY MEMO ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER