Bruce H. Jackson, State Bar No. 98118
bruce.h.jackson@bakernet.com
Irene V. Gutierrez, State Bar No. 252927
irene.v.gutierrez@bakernet.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099

Marcella Ballard, Admitted *Pro Hac Vice*
marcella.ballard@bakernet.com
**BAKER & MCKENZIE LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: +1 212 626 4100
Facsimile: +1 212 310 1600

Attorneys for Defendant
NATIONAL TOBACCO COMPANY, LP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RAYMOND RILEY p.k.a. Boots Riley, SOLOMON DAVID and MARLON IRVING p.k.a. Lifesavas,

Plaintiffs,

v.

NATIONAL TOBACCO COMPANY LP,

Defendant.

**Case No. C-08-01931 JSW**

**REPLY DECLARATION OF MARCELLA BALLARD IN SUPPORT OF MOTION TO DISMISS, STAY OR TRANSFER BY DEFENDANT NATIONAL TOBACCO COMPANY**

**Date:** **June 20, 2008**
**Time:** **9:00 a.m.**
**Courtroom:** **2, 17th Floor**
**Before:** **The Honorable Jeffrey S. White**

**[FILED VIA E-FILING]**

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No C-08-01931 JSW
REPLY DECL OF MARCELLA BALLARD ISO DEF'S MOTION TO DISMISS, STAY OR TRANSFER

I, Marcella Ballard, declare as follows:

1. I am Of Counsel to Baker & McKenzie LLP, counsel for National Tobacco Company LP ("NTC"). I am a member in good standing of the State Bar of New York, and am duly admitted to practice in New York and admitted *pro hac vice* in this action. I have personal knowledge of the matters set forth herein, and, if called as a witness, I could and would testify competently thereto.

2. Mr. McNamer sent a letter dated March 28, 2008 with an Oregon address (not California) to NTC on behalf of the Plaintiffs in this action as well as the Plaintiffs in the related action, asserting that NTC was liable for various claims and demanding payment of over $400,000 on behalf of all the artists. Attached as Exhibit 1 is a true and correct copy of the March 28, 2008 letter.

3. In the letter, forwarded to me by NTC, Mr. McNamer states that unless NTC paid his clients over $400,000, his clients would "have no choice but to issue public statements decrying the unauthorized use of their names, likenesses and biographies . . . ." See Ex. 1.

4. Mr. McNamer also stated that his clients intended to file suit in California and Oregon at an unspecified date. See Ex. 1.

5. Despite disagreeing with Mr. McNamer's contentions, his letter alerted me to a possible justiciable controversy between NTC and his clients. See Ex. 1; see also Royal Queentex Enters. Inc. v. Sara Lee Corp., No. 99 Civ. 4787, 2000 U.S. Dist. LEXIS 10139, at *11 (N.D. Cal. March 1, 2000).

6. On behalf of NTC, I sent Mr. McNamer a letter response by email at 10:51 AM EST (7:51 AM PST) on April 4, 2008. Attached as Exhibit 2 is a true and correct copy of my April 4, 2008 letter.

7. In that letter response, I flatly rejected his basis for liability, stating that "We disagree with your contentions in all respects" (Ex. 2, p. 1) and on behalf of NTC, unequivocally refused to pay the amounts Mr. McNamer had demanded in his March 28, 2008 letter. (Ex. 2, p.2).

8. In the April 4, 2008 letter, I encouraged Mr. McNamer to call me, not to negotiate the matter, but to correct his misunderstanding of the facts underlying the matter. The exact words I used were that I believed he had a "fundamental misunderstanding" of the matter, and that after

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

viewing our letter we hoped he would abandon his demands. See Ex. 2, p. 2.

9. Mr. McNamer and I spoke on the telephone on April 4 at about 3:30 PM EST (12:30 PM PST) and not only did Mr. McNamer refuse to back down, he insisted that his case had merit and was on all fours with Waits v. Frito-Lay, Inc., 978 F.2d 1093 (9th Cir. 1992) in which a California jury awarded the plaintiff a $2.5 million verdict, to which I again told him we disagreed and would not be negotiating any monetary sum with him.

10. After that phone call and after checking the dockets in San Francisco, Oakland and Oregon to see if he had already filed suit, we filed our complaint in the Southern District of New York (the "New York Action") at 4:45 PM EST on April 4.

11. Attached as Exhibit 3 is a true and correct copy of the email Mr. McNamer sent me at 5:43 PM EST (2:43 PM PST) on April 4, attaching a copy of the Waits case. It is clear that Mr. McNamer had already spoken with me when he sent the Waits case, as his email references an earlier conversation. Id. ("Here is the case I was referring to" in our earlier conversation.)

12. It is thus completely untrue that we filed suit "before speaking with" counsel for the Plaintiffs. We filed suit after responding clearly and unequivocally to Mr. McNamer's initial letter, and only after our telephone call made abundantly clear that the case would not settle.

13. When we went to file the New York Action at approximately 4:45 PM EST, the courthouse was under construction, and because it was so late in the day, the Clerk's Office was unable to give us a file-stamped copy at that time. The Clerk's Office took the complaint from us on April 4, 2008, however, they did not give us a file-stamped copy until Monday morning, April 7, 2008.

14. Immediately upon receiving the file stamped copy on Monday April 7, 2008, we served it upon Mr. McNamer by email. A true and correct copy of my email transmitting the complaint is attached as Exhibit 4.

15. Thus it is entirely incorrect to state, as Mr. McNamer has, that we "secretly" filed the New York Action while maintaining the "pretense" of negotiations.

16. After delivering NTC's Complaint to Mr. McNamer, we continued to reject his initial $400,000 demand set forth in his initial letter.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

17. Mr. McNamer requested a counteroffer again on Wednesday, April 9, 2008, which we did not offer. Attached as Exhibit 5 is a true and correct copy of the April 9, 2008 email from Anthony McNamer.

18. On Wednesday, April 9, 2008 we amended the SDNY complaint and filed it, sending notice to Mr. McNamer that very day. Attached as Exhibit 6 is a copy of the email transmitting notice of the amended complaint on April 9, 2008—the day it was filed.

19. Mr. McNamer chose to file his later actions in California on Friday, April 11, 2008, with full knowledge and receipt of both our SDNY complaint filed April 4, 2008 (served on him April 7, 2008) and with full knowledge and receipt of our April 9, 2008 amended complaint.

20. I requested that Mr. McNamer accept service on behalf of Plaintiffs, since he had already represented that he was their lawyer multiple times.

21. Mr. McNamer refused to accept service on behalf of the Plaintiffs, despite already having represented that he was their lawyer in his initial letter. See Ex. 1.

22. Therefore, the personal service of the New York Action on the individual defendants was costly, time consuming and logistically challenging, however there is no doubt that at the time they were served, the artists were all already aware of the New York Action through their counsel, Mr. McNamer, who is representing each one of them in the California Actions and who was served with the New York Action well before the initiation of these California Actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on June 6, 2008 at New York, New York.

Marcella Ballard

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# McNamer and Company

Intellectual Property • Entertainment • Sports • Litigation • Corporate

*Portland*
*Los Angeles*

March 28, 2008

**SEND TO:** National Tobacco Company, LP - General Counsel
Fax Number: 502-774-9235
Telephone Number:

**Client and Matter Number: 564-001**

**FROM:**

Anthony McNamer, Esq. Telephone: (503) 727-2504 Fax: (503) 727-2501

**NUMBER OF PAGES (INCLUDING COVER PAGE): 3**

**THE WRITTEN MESSAGE TRANSMITTED HEREBY IS FOR THE EXCLUSIVE USE OF THE ADDRESSEE AND CONTAINS CONFIDENTIAL, PRIVILEGED AND NONDISCLOSABLE INFORMATION. IF THE RECIPIENT OF THIS MESSAGE IS NOT THE ADDRESSEE, OR A PERSON RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE ADDRESSEE, SUCH RECIPIENT IS PROHIBITED FROM READING OR USING THIS MESSAGE IN ANY WAY. IF YOU HAVE RECEIVED THIS MESSAGE BY MISTAKE, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DESTROY THE FACSIMILE MESSAGE.**

**COMMENTS:**

See attached.

519 SW Third Avenue, Suite 601 • Portland, Oregon 97204 • main: 503.727.2500 • fax: 503.727.2501 • www.mcnamerlaw.com

MCNAMER AND COMPANY

Intellectual Property • Entertainment • Sports • Litigation • Corporate

*Portland*
*Los Angeles*

Anthony McNamer
503.727.2504
anthony@mcnamerlaw.com

March 28, 2008

CONFIDENTIAL SETTLEMENT COMMUNICATION

VIA FACSIMILE (502-774-9235)

National Tobacco Company, LP
General Counsel
3029 W Muhammad Ali Blvd.
Louisville, KY 40212-2238

Re: Lanham Act and Right of Publicity Violations

This firm represents the musical group consisting of Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and the musical group consisting of Solomon David and Marlon Irving p.k.a. Lifesavas. It has come to our attention that since June 12, 2006, October 17, 2007 and October 25, 2007 respectively, you have been using my clients' names, likeness and biographies to promote Zig-Zag brand products on the ZigZagLive.com website (the "Website"). Your unlicensed and illegal use of my clients' names, likeness, and biographies constitutes violations 15 U.S.C. § 1125(a)(1)(A) and various state right of publicity laws, including California Civil Code §3344 and the common law of Oregon. My clients are particularly damaged by this use because they would never license use of their names, likeness and biographies to promote tobacco products. My clients' music does not promote smoking and they are appalled that their fans now perceive them to be profiting from the sale of tobacco products. Your persistent illegal acts have made it appear to these fans that they have "sold out" to a tobacco company. In addition to all parties' unwillingness to promote tobacco products, Boots Riley's music presents a decidedly anti-corporate message. Obviously, his apparent sponsorship by a tobacco company flies directly in the face of the message he has spread throughout his career.

Thus, while under normal circumstances my clients' actual damages would likely be a reasonable licensing fee, under the present circumstances there is no licensing fee that my clients would find reasonable. However, since monetary damages (and your immediate removal of my clients' names, likeness and biographies) are what we must work with, we have investigated what a standard licensing fee would be.

We are informed that if your company had sponsored my clients' live performances (which is what your company is doing in relation to many of the sponsored acts), you would pay between $3000 and $5000 per show. During the period of your illegal use, Blackalicious performed 57 shows, Boots Riley performed 50 shows and Lifesavas performed 27 shows. Thus, ignoring the fact that a license fee would be impossible to negotiate, you would have paid Blackalicious between $171,000 and $285,000, Boots

Riley between $150,000 and $250,000 and Lifesavas between $81,000 and $135,000. Also, with the sizable amount of cross marketing you've done (*e.g.* through sonicbids.com and CMJ) in relation to this campaign, it would not surprise me if the Website has been viewed several millions of times -- thus resulting in far greater publicity than show sponsorships would ever garner.

Though my clients are entitled $285,000, $250,000 and $135,000 respectfully, and additionally are entitled to exemplary damages and their attorneys fees and costs, Blackalicious will settle their claims for $171,000, Boots Riley will settle his claims for the payment of $150,000 and Lifesavas will settle their claims for $81,000. Further, you must immediately cease all use of their names, likeness and biographies, including all such use on the Website.

Our offer will remain open until April 4, 2008. If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likeness and biographies by a tobacco company so as to mitigate any further damage to their reputation. My clients will also file suit in California and Oregon (I am licensed in both states). It obviously would be best for all parties to quickly and confidentially settle this matter. I sincerely hope that is possible under the terms set forth above.

I look forward to your prompt response.

Very truly yours,

McNamer and Company

Anthony McNamer

## Ballard, Marcella

**From:** Ballard, Marcella
**Sent:** Friday, April 04, 2008 10:51 AM
**To:** 'anthony@mcnamerlaw.com'
**Cc:** Ballard, Marcella
**Subject:** FW: Emailing: DOC975.PDF

**Attachments:** DOC975.PDF

DOC975.PDF (86 KB)

Please see the attached letter, I will call you to discuss later today. Marci

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

BAKER & McKENZIE

Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036, USA

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakernet.com

**Asia Pacific**
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

**Europe & Middle East**
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Düsseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**North & South America**
Bogotá
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

**RULE 408 COMMUNICATION**

Marcella Ballard
Tel: +1 212 626 4664
Marcella.Ballard@Bakernet.com

**Via Email anthony@mcnamerlaw.com**

April 4, 2008

Anthony McNamer
McNamer and Company
519 SW Third Avenue, Suite 601
Portland, Oregon 97204

RE: Your clients Blackalicious, Boots Riley and Lifesavas
File No.: 56209771.1

Dear Mr. McNamer:

We represent North Atlantic Trading Company in litigation matters and I received your March 28, 2008 letter in which you have contended that the "unlicensed and illegal" use of your clients' likeness on the ZigZagLive.com website violates the Lanham Act 15 U.S.C. § 1125(a)(1)(A), California Civil Code § 3344 and Oregon common law.

We disagree with your contentions in all respects. To violate the Lanham Act as you know, one must make a false description of fact that is likely to confuse consumers. All three of your clients in fact appeared numerous times on the ZigZagLive concert tour in 2007, as part of or with the group Galactic. Thus it is neither false nor "confusing" for concertgoers to see accurate representations on the ZigZagLive website concerning artists that actually appeared at performances on the ZigZagLive concert tour. Yes, your clients' fans probably saw them on a stage that they voluntarily stepped onto under a "tobacco product" banner on a "corporate" tour.

The fact that your clients willingly appeared multiple times on the ZigZagLive tour completely debunks your claim that your clients are particularly damaged by their association with a company that sells tobacco products. Perhaps Boots Riley would like to donate the Zig-Zag guitar to charity that he readily accepted while participating in the tour, if he is conflicted.

To violate California Civil Code § 3344 (which I presume you have invoked based on the possible domicile in California of one or more of your clients) requires a knowing use, without consent, of a likeness in order to sell goods. As noted, your clients appeared on the ZigZagLive tour voluntarily with the group Galactic. The material for the tour and Galactic's participation was all pursuant to an agreement, approved by the band's management, and undertaken with full advance notice and consent. Perhaps your clients should consult with Galactic (with whom they are still touring apparently) for compensation they believe they are owed.

BAKER & MCKENZIE

§ 3344 follows the "single publication rule" so your purely speculative reference to the possible "millions" of website viewings is irrelevant. Moreover your calculation of damages as including every single performance that your three clients have allegedly participated in over the past few years bears no relationship whatsoever to either the Lanham Act or § 3344 damages, which are specifically enumerated in each statute. We thus cannot offer to pay the amounts you have demanded in your March 28 letter.

Without any waiver of our rights or legal positions my client has taken down the references to Blackalicious, Boots Riley and Lifesavas in the "Artist" section of the ZigZagLive website (which in any event were nothing more than an accurate biography and a link to the artist's websites). In addition to the other deficiencies noted above, the accurate reporting on the ZigZagLive website about bands that actually appeared on the tours falls within the newsworthiness exception to statutory right of publicity law. Notwithstanding that defense and the other deficiencies in your claims, we have taken down the "Artist" pages from the website to accommodate your concerns.

Of course, your clients may choose to make any lawful public statements they wish, but we will look very seriously at any misstatement of fact made by them. We do not wish to engage in litigation over what appears to be a dispute not with my client, but between your clients and Galactic. We believe that your letter is based on a fundamental misunderstanding, and perhaps you did not know that your clients willingly appeared on stage under Zig-Zag banners, and on the ZigZagLive tour when you wrote it. To that end, I look forward to speaking with you upon your receipt of this correspondence and I will give you a call to discuss it later today.

Sincerely,

Marcella Ballard

cc: James W. Dobbins, Esq.

**Ballard, Marcella**

**From:** Anthony McNamer [anthony@mcnamerlaw.com]
**Sent:** Friday, April 04, 2008 5:43 PM
**To:** Ballard, Marcella
**Cc:** Anthony McNamer
**Subject:** Re: Emailing: DOC975.PDF

Here is the case I was referring to.
Waits v. Frito-Lay, Inc., 978 F.2d 1093 (9th Cir. 1992), cert. denied, 506 U.S. 1080 (1993).

In Waits, the Ninth Circuit affirmed a $2.5 million verdict against Frito-Lay and its advertising agency on a voice imitation claim.

Singer Tom Waits sued Frito-Lay claiming false endorsement under the Lanham Act and misappropriation of his voice in a Frito-Lay radio commercial. After trial before Judge James Ideman in the United States District Court (Central District of California), the jury returned a
$2.5 million verdict in Waits' favor comprised of $375,000 in compensatory damages, $2 million in punitive damages, and the remainder in attorneys' fees.

The Ninth Circuit affirmed, citing its holding in Midler v. Ford Motor Co., 849 F.2d 460, 463 (9th Cir. 1988): "when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort in California."

The court also affirmed the $2 million punitive damages award finding that defendants consciously disregarded Waits' right to control his identity. Waits, 978 F.2d at 1105. In affirming the compensatory damage award, the court referred to clear evidence of Waits' outspoken public stance against doing commercial endorsements, his embarrassment when the commercial aired, and the injury to his good will and future publicity value. Id. at 1103-1104

Anthony E. McNamer, Esq.
McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504 fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*

On Apr 4, 2008, at 11:28 AM, Ballard, Marcella wrote:

> Okay. I am in all afternoon. I am stepping out now for about an hour
> though. marci
>
> -----Original Message-----
> From: Anthony McNamer [mailto:anthony@mcnamerlaw.com]
> Sent: Friday, April 04, 2008 2:27 PM
> To: Ballard, Marcella
> Subject: Re: Emailing: DOC975.PDF
>
> I'm actually in SF working on a case, but I can give you a call
> sometime in the next couple hours when I get a break.
>
> Anthony E. McNamer, Esq.
> McNamer and Company
> 519 SW Third Ave, Suite 601
> Portland, Oregon 97204

> ph: 503.727.2504 fax: 503.727.2501
> <http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
> *Please Note Name and Email Change*
>
>
>
>
>
> On Apr 4, 2008, at 11:24 AM, Ballard, Marcella wrote:
>
>> Anthony: are you in your office? Why don't you call me, or I will
>> call you.
>>
>> -----Original Message-----
>> From: Anthony McNamer [mailto:anthony@mcnamerlaw.com]
>> Sent: Friday, April 04, 2008 2:24 PM
>> To: Ballard, Marcella
>> Cc: Kenneth Erlick; John Boyle
>> Subject: Re: Emailing: DOC975.PDF
>>
>> Also, as an aside, Boots Riley did not accept a guitar from Zig Zag.
>> Galactic's guitarist received a guitar. You should better research
>> the facts before you attempt to make a snide jab.
>>
>>
>> Anthony E. McNamer, Esq.
>> McNamer and Company
>> 519 SW Third Ave, Suite 601
>> Portland, Oregon 97204
>> ph: 503.727.2504 fax: 503.727.2501
>> <http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
>> *Please Note Name and Email Change*
>>
>>
>>
>>
>>
>> On Apr 4, 2008, at 7:50 AM, Ballard, Marcella wrote:
>>
>>> <<DOC975.PDF>>
>>>
>>> Please see the attached letter, I will call you to discuss later
>>> today.
>>> Marci
>>>
>>> Marcella Ballard
>>> Counsel, Intellectual Property Group BAKER & McKENZIE LLP
>>> 1114 Avenue of the Americas
>>> New York, NY 10036
>>> Tel: +1 212 626 4664
>>> Fax: +1 212 310 1643
>>> marcella.ballard@bakernet.com
>>>
>>> Baker & McKenzie LLP is a member of Baker & McKenzie International,
>>> a Swiss Verein.
>>>
>>>
>>> Pursuant to requirements related to practice before the Internal
>>> Revenue Service, any tax advice contained in this communication
>>> (including any attachments) is not intended to be used, and cannot
>>> be used, for the purposes of (i) avoiding penalties imposed under
>>> the United States Internal Revenue Code or (ii) promoting, marketing
>>> or recommending to another person any tax-related matter.
>>>
>>> This message may contain confidential and privileged information. If
>>> it has been sent to you in error, please reply to advise the sender
>>> of the error and then immediately delete this message. Click here

>>> or visit www.bakernet.com/disclaimer_bm for other important
>>> information concerning this message.
>>> <DOC975.PDF>
>>
>>
>
>

**Ballard, Marcella**

---

**From:** Ballard, Marcella
**Sent:** Monday, April 07, 2008 12:36 PM
**To:** 'anthony@mcnamerlaw.com'
**Cc:** Ballard, Marcella; Lakes, Joi
**Subject:** Attached Complaint
**Attachments:** Waiver of Service.pdf; Complaint_08CV03383.pdf; Judge Scheindlin Rules.pdf

Mr. McNamer:
Attached is a complaint filed April 4, 2008. Please reply by return email whether you will accept service on behalf of the named defendants. Also attached is USDC SDNY waiver of service form. Be advised that if you do not accept service and end up representing the named defendants, your clients will be liable for the costs of service for the summons and complaint. I have also enclosed Judge Scheindlin's rules and procedures.

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

Page 1 of 1

**Ballard, Marcella**

---

**From:** Anthony McNamer [anthony@mcnamerlaw.com]

**Sent:** Wednesday, April 09, 2008 12:31 PM

**To:** Ballard, Marcella

**Subject:** Counter

Do you have a counter offer or should I just file?

**Anthony E. McNamer, Esq.**
**McNamer and Company**
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504 fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*

**Ballard, Marcella**

**From:** Ballard, Marcella
**Sent:** Wednesday, April 09, 2008 12:51 PM
**To:** 'Anthony McNamer'
**Cc:** Ballard, Marcella; Lakes, Joi
**Subject:** RE: Counter
**Attachments:** DOC348.PDF

See attached letter, which is a courtesy copy for you. Please advise if you are representing the defendants and will accept service in this matter.

---

**From:** Anthony McNamer [mailto:anthony@mcnamerlaw.com]
**Sent:** Wednesday, April 09, 2008 12:31 PM
**To:** Ballard, Marcella
**Subject:** Counter

Do you have a counter offer or should I just file?

**Anthony E. McNamer, Esq.**
**McNamer and Company**
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504 fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*